730 N.E.2d 131 (2000)
313 Ill. App.3d 675
246 Ill.Dec. 451
In re K.H., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Chasidy Huff, Respondent-Appellant.
No. 4-99-0969.
Appellate Court of Illinois, Fourth District.
May 22, 2000.
*132 Adele M. Saaf (Court-appointed), Jennings, Novick, Smalley & Davis, Bloomington, for Chasidy Huff.
*133 Charles G. Reynard, State's Attorney, Bloomington, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, James C. Majors, Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice KNECHT delivered the opinion of the court:
On November 23, 1999, the circuit court of McLean County entered a permanency order pursuant to section 2-28 of the Juvenile Court Act of 1987(Act) (705 ILCS Ann. 405/2-28 (Smith-Hurd Supp.2000)), changing the permanency goal for the minor, K.H., from "return home" to "substitute care pending court determination." Respondent mother, Chasidy Huff, appeals, arguing (1) the trial court exceeded its statutory authority in changing the permanency goal to "substitute care pending court determination" absent a petition to terminate parental rights filed by the State; (2) the trial court erred in failing to apply a clear and convincing standard of proof to its determination to change the permanency goal; and (3) the trial court erred in failing to comport with the procedural requirements of section 2-28 of the Act. We affirm but remand with directions.
I. BACKGROUND
The record before us establishes the following. The female minor, K.H., was born on August 8, 1998. Chasidy Huff is the minor's mother. Zachary Johnson is the father.
On December 9, 1998, K.H., an infant earlier diagnosed with sickle cell anemia, was hospitalized for water intoxication and possible failure to thrive. The Department of Children and Family Services (DCFS) took protective custody of K.H. on December 10, 1998.
The State filed a petition for adjudication of wardship on December 14, 1998, alleging K.H. was a neglected minor as defined in section 2-3 of the Act (705 ILCS 405/2-3 (West 1998)). The petition alleged respondent mother created a substantial risk of physical injury to the infant in that she repeatedly fed water to K.H., after having been instructed by medical personnel not to so do. The petition further alleged respondent's actions resulted in the infant's water intoxication.
An initial report filed with trial court by DCFS indicated K.H. had previously been diagnosed with sickle cell anemia, and respondent mother frequently failed to take K.H. to scheduled visits with her doctor. In addition, respondent mother voluntarily discontinued K.H.'s penicillin, after having been informed by her pediatrician K.H. would need to take the medication until she saw a specialist. During K.H.'s hospitalization for water intoxication, respondent once again fed water to K.H. after being instructed by hospital staff not to do so. Based on this evidence, the trial court placed temporary custody of K.H. with DCFS.
At the adjudicatory hearing on January 21, 1999, respondent mother admitted to the allegation of neglect due to substantial risk of personal injury resulting from water intoxication. The trial court adjudicated K.H. a neglected minor and found respondent father in default due to his failure to appear.
The trial court held a dispositional hearing on March 12, 1999. Evidence before the trial court included a dispositional report filed by DCFS on March 5, 1999. This report reiterated the findings of a December 14, 1998, report and recommended guardianship of K.H. be placed with DCFS until respondent could meet minimum parenting standards. Following the hearing, the trial court made K.H. a ward of the court and transferred guardianship to DCFS with authority to request and consent to routine medical procedures. The trial court adopted the permanency goal recommendation of DCFS of "return home within 12 months" and ordered K.H. remain in foster care until successful completion of reunification services. The trial court found respondent father unfit, but *134 declined to make a fitness determination as to respondent mother.
The trial court held a permanency review hearing on September 3, 1999. Respondent mother testified and other evidence included a permanency review report filed on August 20, 1999. The evidence established the following. On July 25, 1999, respondent gave birth to her second child, K.B., a boy, but failed to notify the hospital of DCFS involvement and of the history of sickle cell anemia in her family. Respondent acknowledged she received an unsatisfactory rating regarding her progress toward the goal of "return home within 12 months" based on her failure to attend all appointments pertaining to K.H.
The evidence presented further revealed K.H.'s "extremely fragile health," establishing she had been hospitalization over 10 times in the first year of her life. The permanency review report detailed K.H.'s propensity to move swiftly into medical crises, noting the need to constantly monitor her moods, movements, and temperature. This report further noted the critical issue of respondent's inability to parent a "medically complex child." At the conclusion of the hearing, the trial court found the goal of "return home within 12 months" had not been achieved, but ordered continued services consistent with that goal, pending a permanency review hearing.
The trial court held a second permanency review hearing on November 23, 1999. Two child welfare specialists with the Baby Fold, a private organization selected by DCFS to provide services to respondent, testified at the hearing: Laura Dick, the caseworker assigned to respondent through October 12, 1999, and Ann Crump, respondent's current caseworker. In addition, respondent testified on her own behalf. Other evidence before the trial court included a permanency review report filed by the Baby Fold on October 12, 1999.
The evidence before the trial court established the following. During September and October of 1999, K.H. had been hospitalized approximately three times. On September 2, 1999, respondent arrived late to a dermatology appointment for K.H. On September 10, 1999, respondent arrived 30 minutes late to a scheduled hospital visit with K.H. On September 13, 1999, the foster mother reported to respondent K.H. had been diagnosed with pneumonia, but respondent did not call to check on K.H. in the days following the diagnosis. On September 15, 1999, respondent arrived 25 minutes late to a scheduled visit with K.H. in the hospital. Within minutes of being told K.H. had a temperature of 102.6 degrees, respondent left the visit early, stating she had to catch a bus. On September 21, 1999, respondent canceled a scheduled in-home services visit, indicating she had personal problems she could not discuss. On October 5, 1999, respondent informed DCFS she would not be available for her appointment that day, nor would she be available for appointments on Tuesdays or Wednesdays. That same day, respondent's caseworker discovered respondent at home at the time of her scheduled appointment. The dispositional report filed by the Baby Fold recommended both respondent mother and father be found unfit, but that the permanency goal remain "return home within 12 months."
Further evidence before the trial court included respondent's testimony wherein she recanted her previous admission to the allegation of the neglect in the State's petition. At the close of evidence, the trial court found the goal of "return home within 12 months" had not been achieved. The trial court found respondent mother unfit and changed the permanency goal to "substitute care pending court determination." This appeal followed.

II. ANALYSIS
Respondent mother's first contention on appeal is the trial court exceeded its statutory authority under the Act (705 *135 ILCS 405/1-1 et seq. (West 1998)) by ordering the permanency goal of "substitute care pending court determination," absent a request for termination in the State's petition and in advance of the State's motion to termination. Respondent's contention calls into question the authority granted to the trial court by section 2-28 of the Act (705 ILCS Ann. 405/2-28 (Smith-Hurd Supp.2000)), which governs the procedure for selecting a permanency goal.
Section 2-28 of the Act (705 ILCS Ann. 405/2-28(2) (Smith-Hurd Supp.2000) (as amended by Pub. Act 90-608, § 30, eff. June 30, 1998 (1998 Ill. Legis. Serv. 1575, 1612-15 (West)), and 91-357, § 236, eff. July 29, 1999 (1999 Ill. Legis. Serv. 3070, 3632 (West))); see In re J.H., 304 Ill. App.3d 188, 196-97, 237 Ill.Dec. 446, 709 N.E.2d 701, 707 (1999)) provides in relevant part as follows:
"At the permanency hearing, the court shall determine the future status of the child. The court shall set one of the following permanency goals:

(A) The minor will be returned home by a specific date within 5 months.
(B) The minor will be in short-term care with a continued goal to return home within a period not to exceed one year * * *.
(B-1) The minor will be in short-term care with a continued goal to return home pending a status hearing. * * *
(C) The minor will be in substitute care pending court determination on termination of parental rights.

(D) Adoption, provided that parental rights have been terminated or relinquished.
(E) The guardianship of the minor will be transferred to an individual or couple on a permanent basis * * *.
(F) The minor over age 12 will be in substitute care pending independence.
(G) The minor will be in substitute care because he or she cannot be provided for in a home environment due to developmental disabilities * * *." (Emphasis added.)
A fundamental canon of statutory interpretation and construction is to ascertain and give effect to the intention of the legislature. McCann v. Presswood, 308 Ill.App.3d 1068, 1071, 242 Ill.Dec. 532, 721 N.E.2d 811, 813 (1999). This inquiry appropriately begins with the language of the statute itself (People v. Woodard, 175 Ill.2d 435, 443, 222 Ill.Dec. 401, 677 N.E.2d 935, 939 (1997)), as the language used by the legislature is the best indication of legislative intent (Kirwan v. Welch, 133 Ill.2d 163, 165, 139 Ill.Dec. 836, 549 N.E.2d 348, 349 (1989)). In interpreting a statute, a court must give the legislative language its plain and ordinary meaning. Staske v. City of Champaign, 183 Ill.App.3d 1, 4, 132 Ill.Dec. 184, 539 N.E.2d 747, 749 (1989). Courts may not, under the guise of statutory interpretation, create new rights or limitations not suggested by the language of the statute. Trigg v. Sanders, 162 Ill. App.3d 719, 727, 114 Ill.Dec. 96, 515 N.E.2d 1367, 1372 (1987). A court cannot read into a statute words that are not within the intention of the legislature as determined from the statute, nor can a court restrict or enlarge the meaning of a statute. Trigg, 162 Ill.App.3d at 727, 114 Ill.Dec. 96, 515 N.E.2d at 1373.
Based on the plain language of the statute, we find section 2-28(2) (705 ILCS Ann. 405/2-28(2) (Smith-Hurd Supp.2000)) does not require the trial court's selection of a permanency goal be conditioned upon a prior filing of a petition to terminate parental rights by the State. After enumerating the available permanency goals, section 2-28(2) mandates several factors to be considered by the trial court in establishing that goal. This defined set of factors contains no requirement that the trial court consider any prior action or filing on the part of the State in establishing the permanency goal. Contrary to the plain language of section 2-28, respondent urges this court to place a limitation on the trial court's authority not expressly provided *136 for by the legislature. We decline to do so and conclude the legislature did not limit the trial court's ability to order "substitute care pending a court determination" as a permanency goal prior to the State filing a petition to terminate parental rights.
Our interpretation is further supported by the language of section 2-28(4) (705 ILCS Ann. 405/2-28(4) (Smith-Hurd Supp. 2000)), which contemplates the filing of a petition to terminate after the court establishes a permanency goal other than "return home."
Section 2-28(4) provides as follows in pertinent part:
"(4) The minor or any person interested in the minor may apply to the court for a change in custody of the minor * * *.
When return home is not selected as the permanency goal:
* * *
(b) The State's Attorney may file a motion to terminate parental rights of any parent * * * for whom any * * * unfitness ground for terminating parental rights as defined in subdivision (D) of Section 1 of the Adoption Act exists." (Emphasis added.) 705 ILCS Ann. 405/2-28(4) (Smith-Hurd Supp.2000).
Although section 2-28(4) refers to a petitioner's ability to petition the trial court for a change in custody, the language of this section clearly contemplates the circumstance wherein a trial court might select a permanency goal other than "return home" prior to the State filing a petition to terminate. As enumerated in section 2-28(2), one of the designated permanency goals other than "return home" is "substitute care pending court determination" (705 ILCS Ann. 405/2-28(2)(C) (Smith-Hurd Supp.2000)). Considering section 2-28 as a whole, we conclude the trial court is not prohibited from ordering as a permanency goal "substitute care pending a court determination on termination of parental rights" prior to the State filing a petition to terminate parental rights.
Given our determination the trial court did not exceed its statutory authority, we need not consider respondent's contention the trial court, in so exceeding its statutory authority, improperly ordered early termination of reunification services.
Respondent next contends the cause should be remanded for rehearing to apply a clear and convincing standard of proof to the trial court's decision to change the permanency goal to "substitute care pending determination." Respondent's reliance on Justice Cook's thoughtful concurrence in In re J.H., 304 Ill.App.3d 188, 201, 237 Ill.Dec. 446, 709 N.E.2d 701, 710 (1999) (Cook, J., specially concurring), gives rise to this argument.
Citing Justice Cook's special concurrence (J.H., 304 Ill.App.3d at 201, 237 Ill. Dec. 446, 709 N.E.2d at 710 (Cook, J., specially concurring)), respondent argues the selection of the permanency goal of "substitute care pending court determination" is tantamount to a termination of parental rights because reunification services are no longer provided to the respondent parents. Based on this line of reasoning, respondent concludes the trial court's determination to select a permanency goal of "substitute care pending court determination" should be supported by clear and convincing evidence so as to comport with due process requirements. See Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1391-92, 71 L.Ed.2d 599, 603 (1982).
We decline to adopt respondent's position and find section 2-28 does not require the trial court's decision regarding a permanency goal be based on clear and convincing evidence. The selection of a permanency goal is not a final determination on the merits with regard to termination of parental rights but, rather, an intermediate procedural step taken for the protection of and best interests of the child.
Further, in reviewing the trial court's determination, we find the trial court did not err in modifying the permanency *137 goal in the present case. The trial court is given broad discretion to select a permanency goal in the best interest of the child. Accordingly, the trial court's decision regarding a permanency goal is entitled to deference and will not be disturbed on appeal unless contrary to the manifest weight of the evidence. J.H., 304 Ill. App.3d at 200, 237 Ill.Dec. 446, 709 N.E.2d at 709. The finding of a trial court is against the manifest weight of evidence if review of the record demonstrates the proper result is the one opposite that reached by the trial court. In re M.K., 271 Ill.App.3d 820, 826, 208 Ill.Dec. 242, 649 N.E.2d 74, 79 (1995).
Applying this standard, our review of the record establishes the trial court's decision to modify the permanency goal to "substitute care pending court determination" was not contrary to the manifest weight of the evidence. The evidence presented at the permanency review hearing demonstrated respondent was either unwilling or unable to parent K.H., a medically complex child. Respondent consistently failed to follow the recommendations of medical personnel regarding K.H.'s medical care, resulting in K.H.'s hospitalization for water intoxication. Respondent regularly failed to take K.H. to schedule medical appointments. Respondent voluntarily discontinued providing necessary medication to K.H. that had been prescribed to her by her pediatrician. Once K.H. was removed from respondent's custody, respondent regularly arrived late to medical appointments for K.H. and scheduled visitations with K.H. Further, respondent, at the November 23, 1999, permanency review hearing, recanted her previous admission to the allegation of neglect and denied responsibility for K.H. having sustained water intoxication. Accordingly, we find no error in the trial court's determination on this point.
As a final matter, respondent argues the trial court erred in failing to comport with the procedural requirements of section 2-28 of the Act.
The relevant portion of section 2-28(2) (705 ILCS Ann. 405/2-28(2) (Smith-Hurd Supp.2000)) upon which respondent relies provides in pertinent part: "In selecting any permanency goal, the court shall indicate in writing the reasons the goal was selected and why the preceding goals were ruled out."
Although we view the evidence as more than sufficient to support the trial court's decision to change the permanency goal, the trial court failed to comply with the procedural requirements of section 2-28. After multiple amendments, the current version of section 2-28 (705 ILCS Ann. 405/2-28 (Smith-Hurd Supp.2000)) expressly requires the trial court to make written findings as to why a particular permanency goal was selected and why the preceding enumerated goals were ruled out. Here, even considering the trial court's oral pronouncements together with its written order, the trial court failed to substantially comply with procedural requirements of section 2-28(2). Although we find the trial court's determination to be correct, the trial court must comply with the procedural mandates of section 2-28(2) of the Act. Accordingly, in guidance to the trial court, we recommend careful consideration be given to the new procedural requirements of section 2-28 and suggest the trial court reevaluate the standardized forms used in such proceedings to ensure adherence to the current procedural mandates.
For the reasons stated, we affirm the determination of the trial court, but remand the cause and instruct the trial court to modify its November 23, 1999, order to include express written findings consistent with the requirements of section 2-28 of the Act.

III. CONCLUSION
For the reasons stated, we affirm the judgment of the circuit court of McLean County but remand with directions.
*138 Affirmed; cause remanded with directions.
STEIGMANN and GARMAN, JJ., concur.