749 N.E.2d 31 (2001)
319 Ill. App.3d 989
255 Ill.Dec. 251
In re D.D.H., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
T.H., Respondent-Appellant).
No. 5-99-0716.
Appellate Court of Illinois, Fifth District.
March 30, 2001.
*32 Robert E. Shaw, Curtis W. Martin, Shaw & Martin, Mt. Vernon, for Appellant.
Gary Duncan, State's Attorney; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Mt. Vernon, for Appellee.
Presiding Justice CHAPMAN delivered the opinion of the court:
The respondent-appellant, T.H., is the natural mother of D.D.H., a daughter, born January 2, 1992. On October 4, 1999, the trial court entered a permanency hearing *33 order that changed the permanency goal for D.D.H. Section 2-28(3) of the Juvenile Court Act of 1987 (705 ILCS 405/2-28(3) (West 1998)) allows parties to appeal such orders: "Any order entered pursuant to this subsection * * * shall be immediately appealable as a matter of right under Supreme Court Rule 304(b)(1) [155 Ill.2d R. 304(b)(1)]." T.H. appeals under the authority of this section. The State disagrees with her on the merits of the appeal, but the State also challenges our jurisdiction. The State contends that this provision of section 2-28(3) is an unconstitutional violation of the separation-of-powers clause of our constitution (Ill. Const. 1970, art. VI, § 6). We conclude that the provision of section 2-28(3) which makes such an order immediately appealable is unconstitutional, and we dismiss the appeal for lack of jurisdiction.
On October 27, 1995, the Department of Children and Family Services of the State of Illinois (DCFS) filed a petition alleging an abused child. The petition was filed in the circuit court of Jefferson County pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/1-1 et seq. (West 1998)). DCFS alleged five incidences of the abuse by T.H. toward D.D.H. DCFS requested that D.D.H. be adjudged a ward of the court, that DCFS be appointed her guardian, and that T.H. be required to undergo a psychiatric evaluation and to follow all the recommendations of the evaluation. At the shelter-care hearing, held on the same day that DCFS filed the petition, the court entered an order naming DCFS as guardian and placing D.D.H. in foster care. The trial court eventually adjudged D.D.H. to be dependent, and the court set a permanency goal for her eventual return to T.H.
Numerous reports were made to the court over the next several years. These reports showed that T.H. continued to suffer serious alcoholand drug-abuse problems and often failed to comply with the trial court's orders to attend intensive counseling and submit to random drug testing. Throughout this time, however, the permanency goal remained the same returning D.D.H. to T.H. In August 1998, after T.H. had made significant progress, D.D.H. was returned to T.H. and they remained together for several months.
A DCFS report dated April 30, 1999, stated that (1) T.H. was frequently missing her counseling sessions and had lost her job, (2) D.D.H. had been absent from school subsequent to February 18, and (3) on March 10, DCFS, with the assistance of the police, had removed D.D.H. from her mother's care. The court set a permanency hearing for October 4, 1999, and at that hearing, the court changed the permanency goal to substitute care, pending a court determination on whether to terminate T.H.'s parental rights.
Section 2-28 of the Juvenile Court Act of 1987 (705 ILCS 405/2-28 (West 1998)) provides the procedure to establish a permanency goal for minors found to be abused or neglected. Pursuant to this section, a court must conduct permanency hearings at least every six months following the initial permanency hearing. Part of section 2-28(3) provides that any order entered following a permanency hearing "shall be immediately appealable as a matter of right under Supreme Court Rule 304(b)(1)." 705 ILCS 405/2-28(3) (West 1998).
Rule 304(b)(1) (155 Ill.2d R. 304(b)(1)) states that "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party" may be appealed. The jurisdictional problem is that a permanency goal does not finally determine a right or status of a party but instead looks at the anticipated *34 future status of the child. See In re K.H., 313 Ill.App.3d 675, 682, 246 Ill.Dec. 451, 730 N.E.2d 131, 136 (2000) ("The selection of a permanency goal is not a final determination on the merits with regard to termination of parental rights but, rather, an intermediate procedural step taken for the protection of and best interests of the child").
Generally, only final judgments are appealable as a matter of right. Ill. Const.1970, art. VI, § 6. Only the supreme court may provide by rule for appeals to the appellate court from nonfinal judgments. The legislature may only regulate the practice and set limits on the time for review. In this case, the legislature attempted to define appellate jurisdiction over a nonfinal order, in violation of our constitution's separation-of-powers clause (Ill. Const.1970, art. VI, § 6). See Almgren v. Rush-Presbyterian-St.Luke's Medical Center, 162 Ill.2d 205, 213, 205 Ill.Dec. 147, 642 N.E.2d 1264, 1268 (1994). Thus, this provision of the statute is invalid.
T.H. contends that if we agree with the State's argument on the separation-of-powers issue, we must hold the entire statute unconstitutional because it does not contain a severability clause. However, that fact does not necessarily constrain our analysis of whether severability is possible. The presence of a severability clause does not mean that severability is always possible. See Cincinnati Insurance Co. v. Chapman, 181 Ill.2d 65, 81, 229 Ill.Dec. 264, 691 N.E.2d 374, 381 (1998). The absence of a severability clause does not necessarily require a court to avoid severing a portion of a statute. We rely on "the powers inherent in the judiciary" and apply the severability test in this case. See Chapman, 181 Ill.2d at 81, 229 Ill.Dec. 264, 691 N.E.2d at 381.
This test relies on looking at whether the provisions are "so mutually connected and dependent on each other * * * as to warrant the belief that the legislature intended them as a whole." Chapman, 181 Ill.2d at 81-82, 229 Ill.Dec. 264, 691 N.E.2d at 382. In addition, in determining the severability of an unconstitutional provision, a court must look at the subject addressed by the statute and at its objective. Dornfeld v. Julian, 104 Ill.2d 261, 265, 84 Ill.Dec. 471, 472 N.E.2d 431, 432 (1984).
If there is no severability clause and the invalid portion is closely interconnected with the rest of the statute, it should be presumed that the intent was for the statute to be treated as a whole. City of Harvard v. Gaut, 277 Ill.App.3d 1, 8-9, 214 Ill.Dec. 68, 660 N.E.2d 259, 263 (1996). However, if there is no severability clause and the invalid portion is not interconnected with the rest of the statute, a court should look at the legislature's intent and may assume that the legislature intended to enact a statute that was consistent with the constitution. Dornfeld, 104 Ill.2d at 265, 84 Ill.Dec. 471, 472 N.E.2d at 432.
In this case, the portion of the statute at issue is procedural and deals only with interlocutory appeals. The rest of the statute can easily be given its effect when the invalid provision is excluded. We conclude that the invalid portion of the statute is not interconnected with the rest of the statute and can appropriately be stricken while the remainder of the statute is left intact.
As the result of striking this statutory provision, we have an attempt to appeal a nonfinal order that is not authorized by the supreme court. See Fligelman v. City of Chicago, 264 Ill.App.3d 1035, 1037, 202 Ill.Dec. 459, 637 N.E.2d 1195, 1196-97 *35 (1994). Therefore, we must dismiss the appeal for lack of jurisdiction.
Appeal dismissed.
WELCH and GOLDENHERSH, JJ., concur.