In re FAITH B. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Perseta B., Respondent-Appellant).

Second District   No. 2—03—1349

Opinion filed June 28, 2004.

Anna M. Wilhelmi, of Anna M. Wilhelmi Law Offices, P.C., of Aurora, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Mary Katherine Moran, Special State's Attorney, and Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kristine A. Karlin, of Mt. Prospect, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Respondent, Perseta B., appeals a series of orders of the circuit court of Kane County that resulted in placing her two minor children, Stephen B. and Faith B., in guardianships with two maternal aunts.

Respondent alleges error in (1) the circuit court's decision to adjudicate the minors abused and neglected and (2) the circuit court's determination that private guardianship is an appropriate permanency goal. For the reasons that follow, we affirm. The parties are aware of the facts and the findings of the trial court, and we will discuss them only as they pertain to the issues presented.

## I. THE ADJUDICATORY HEARING

Respondent first contests the trial court's determination that the minors were abused and neglected. We will not disturb such a determination unless it is contrary to the manifest weight of the evidence. *In re K.S.*, 343 Ill. App. 3d 177, 184 (2003). In its petition for adjudication, the State set forth three bases upon which it asserted that the minors were abused or neglected. First, it alleged that the minors were neglected because of the injurious environment created by respondent's mental health issues. 705 ILCS 405/2—3(1)(b) (West 2002). Second, it alleged that they were neglected because domestic violence issues placed them at risk of harm, creating an injurious environment. 705 ILCS 405/2—3(1)(b) (West 2002). Third, it alleged that the minors were abused because respondent struck Faith in the face and Stephen in the stomach. 705 ILCS 405/2—3(2)(i) (West 2002). These findings are contrary to the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *In re M.M.*, 337 Ill. App. 3d 764, 779 (2003). Because an opposite conclusion is not, we affirm the trial court on these points.

In addressing the first allegation, the trial court initially noted the incident in which respondent struck Faith in the face and Stephen in the stomach. The court later found respondent's testimony regarding this incident lacking in credibility. It also observed that respondent was first hospitalized in December 2002, when medical records showed a diagnosis of "delusional disorder paranoid type" and stated that bipolar disorder should be ruled out. Respondent was given Risperdal, an antipsychotic medication. A second hospitalization the following May revealed similar issues. Respondent was given Haldol and other drugs. The court then noted that, during her testimony, respondent "still presents with the same facts that she had stated to people at the hospital." The court also observed that the minors were concerned for and fearful of their mother. Accordingly, the court concluded that the State had demonstrated that respondent's mental health issues placed the minors at risk of harm. Therefore, they were neglected.

■ The concept of neglect based on an injurious environment is somewhat amorphous, as it must be, for each case is *sui generis*. *In re K.G.*, 288 Ill. App. 3d 728, 735 (1997). Each case is unique and must

be judged on its own specific facts. *In re Ashley F.*, 265 Ill. App. 3d 419, 424 (1994). In a general sense, "neglect" can be defined as "the failure to exercise the care that circumstances justly demand and encompasses both wilful and unintentional disregard of parental duty." *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995).

The mere fact that a parent has a mental illness does not lead inevitably to the conclusion that children in his or her care are neglected or that their environment is injurious. In order for a parent's mental illness to form the basis of a finding of an injurious environment, there must be a nexus between the illness and a risk of harm to the children. Although the following cases do not address the precise issue here, as they involved terminations of parental rights, we find them instructive on these points.

Considering whether the rights of a parent were properly terminated due to the parent's mental illness, the First District observed, "The unfitness of a mentally ill parent is grounded on the parent's inability to discharge parental responsibilities, not the parent's inability to control her conduct." *In re A.J.*, 269 Ill. App. 3d 824, 828-29 (1994). In *In re T.J.*, 319 Ill. App. 3d 661, 670 (2001), the court stated, "Moreover, the Adoption Act required the State not only to prove that Ms. Cooper was suffering from a mental illness or impairment, but also that this mental condition rendered her unable to discharge her parental responsibilities." Similarly, it has been held that "[n]ot every parent with a psychiatric illness or condition is *per se* unfit to be a parent and to maintain custody of her children," for the Adoption Act (750 ILCS 50/1 *et seq.* (2002)) "affects only those parents 'who cannot discharge their parental responsibilities due to these disabilities and whose inability to do so will extend beyond a reasonable period of time.' (Emphasis omitted.)" *In re B.S.*, 317 Ill. App. 3d 650, 664 (2000), quoting *In re I.D.*, 205 Ill. App. 3d 543, 549 (1990); see also *In re M.F.*, 326 Ill. App. 3d 1110, 1113-15 (2002).

■ While the above-cited cases concern the termination of parental rights, the principle they stand for is applicable here. It is not enough for the State to show that respondent suffers from a mental illness; it must show that respondent's mental illness places the children in an injurious environment. Our review of the record indicates that the State met this burden. Most significantly, one violent episode occurred where respondent struck Faith in the face and Stephen in the stomach. Respondent told a caseworker from the Department of Children and Family Services (DCFS) that she was disciplining Faith because Faith was "mouthing off." On appeal, she attempts to characterize her actions as appropriate corporal punishment. However, the trial court specifically found respondent's account not credible, noting that her

explanation of this incident had changed and that, at trial, respondent testified that she accidentally struck Faith. Credibility assessments lie within the province of the trial court. *In re D.L.*, 326 Ill. App. 3d 262, 269 (2001).

Respondent also attempts to characterize this incident as isolated. Relying on *In re N.B.*, 191 Ill. 2d 338 (2000), respondent contends that "one isolated outburst of anger is not neglect." However, *In re N.B.* is distinguishable. In that case, there was no evidence that the children were exposed to any form of violence. See *In re N.B.*, 191 Ill. 2d at 347-49. The sole incident in which the respondent's conduct posed a risk of physical harm to her children involved her swinging her baby carrier as she turned, which caused the carrier to strike a wall. In fact, in that case, the supreme court specifically distinguished *In re M.K.*, 271 Ill. App. 3d 820 (1995), on this ground, stating that "there is no proof in this case that [the] respondent ever exposed her children to any source of physical abuse." *In re N.B.*, 191 Ill. 2d at 352-53. Similarly, the instant case is distinguishable from *In re N.B.* because, here, a violent episode occurred where respondent intentionally struck both of her children. Moreover, and perhaps more importantly, the incident may not be as significant in itself as it is probative of the potentially violent nature of respondent's mental illness.

Additional evidence supports the trial court's determination. Respondent has been hospitalized and prescribed various psychoactive medications. Respondent acknowledged that she no longer takes them and stated that she does need help. She refused to sign a safety plan crafted by DCFS. During a status hearing, she stated, "I am refusing to go to Provena. *** If that means that I lose my kids, well, then, we can do that today, because I will never go back there ever again." DCFS employees reported aggressive and belligerent conduct on respondent's part. On the witness stand, she made a number of delusional statements. The minors stated that they feel safer residing with their aunts.

In sum, ample evidence exists regarding respondent's mental illness. Furthermore, the record shows a nexus between the illness and a risk of harm in the minor's environment, in light of respondent's act of violence and the minors' own testimony regarding their feeling of safety. Given this evidence, we cannot say that a conclusion opposite to that drawn by the trial court was clearly apparent; therefore, we cannot say that the trial court's decision was contrary to the manifest weight of the evidence. *In re April C.*, 345 Ill. App. 3d 872, 889 (2004).

The same evidence supports the trial court's determination regarding the second and third allegations made by the State. We simply cannot say that it is clearly apparent that domestic abuse issues do

not exist where respondent has demonstrated a potential for violence toward her children and is not addressing the cause of that violence. Nor can we say that the finding that the children were abused is against the manifest weight of the evidence where they were subjected to a violent attack. Therefore, we affirm the order of the trial court.

## II. THE DISPOSITIONAL HEARING

■ During the dispositional hearing, the trial court set the minors' permanency goal as "private guardianship." 705 ILCS 405/2—28(2)(E) (West 2002). Respondent contends that this was error and that the permanency goal should have involved returning the minors to respondent. As a preliminary matter, the State argues that we lack jurisdiction over this portion of the appeal. Respondent asserts Supreme Court Rule 303(a) (155 Ill. 2d R. 303(a)), which pertains to final judgments, as the basis for appellate jurisdiction rather than seeking leave to file an interlocutory appeal under Rule 306(a)(5) (166 Ill. 2d R. 306(a)(5)).

It is true that the setting of a permanency goal is not a final order. See *In re A.H.*, 207 Ill. 2d 590, 594 (2003). However, a dispositional order generally is appealable. See *In re Brandon S.*, 331 Ill. App. 3d 757, 760 (2002) ("A disposition order from the juvenile court is generally considered final and appealable. [Citation.] A disposition order concerning a ward of the court may, among other options, order that the child remain with his parents, place the child with a relative or other legal guardian, commit the child to the DCFS for care and service, restore the child to his parents, or order that the child be partially or completely emancipated"). Although the decision respondent attacks was rendered as part of the dispositional hearing, it is clear to us that respondent's attack is actually upon the permanency goal itself.

It is, of course, the nature of the order rather than the nature of the hearing that is relevant in determining whether appellate jurisdiction exists. *In re J.N.*, 91 Ill. 2d 122, 128 (1982) ("In determining whether a judgment is final, one should look to its substance rather than to form"). A dispositional order is final because it may change the status or rights of the parties; for example, it might alter custody or guardianship. See 705 ILCS 405/2—23 (West 2002). A permanency order, on the other hand, does not. *In re D.S.*, 198 Ill. 2d 309, 329 (2001), quoting *In re K.H.*, 313 Ill. App. 3d 675, 682 (2000) (holding that "[t]he selection of a permanency goal is not a final determination on the merits with regard to termination of parental rights but, rather, an intermediate procedural step taken for the protection of and best interests of the child").

A recent line of cases holds that appellate courts do not have jurisdiction over permanency orders. In *In re D.D.H.*, 319 Ill. App. 3d 989, 991 (2001), the Fifth District observed, "The jurisdictional problem is that a permanency goal does not *finally* determine a right or status of a party but instead looks at the anticipated *future* status of the child." (Emphasis in original.) After concluding that section 2—28(3) of the Juvenile Court Act of 1987 (705 ILCS 405/2—28(3) (West 2002)), which attempted to make orders setting permanency goals appealable, was unconstitutional, the court went on, "As the result of striking this statutory provision, we have an attempt to appeal a nonfinal order that is not authorized by the supreme court." *In re D.D.H.*, 319 Ill. App. 3d at 992. Thus, the Fifth District concluded that orders setting permanency goals are not appealable because they are not final orders. *In re D.D.H.*, 319 Ill. App. 3d at 992. The Fourth District, in *In re C.B.*, 322 Ill. App. 3d 1011, 1013 (2001), came to an identical conclusion: "Also as in *D.D.H.*, the invalidation of the appealability provision in section 2—28(3) renders this an unauthorized appeal from a nonfinal order, and we dismiss the appeal for lack of jurisdiction."

This court followed the two above-cited cases in *In re A.M.*, 324 Ill. App. 3d 144, 145-46 (2001). We held, "Based on the decisions in *C.B.* and *D.D.H.*, we conclude that *the order changing the permanency goal* in the instant case constitutes a nonfinal order for which the supreme court has provided no rule for an appeal to this court and, therefore, we lack jurisdiction to consider the appeal." (Emphasis added.) *In re A.M.*, 324 Ill. App. 3d at 145-46. We recognize that one statement in *In re A.M.* can be read as stating that it is the nature of the hearing, rather than the order, that is relevant. *In re A.M.*, 324 Ill. App. 3d at 144-45 ("In its motion the State argues that this court lacks the jurisdiction to consider the appeal because the statutory provision purporting to make any order entered in a permanency hearing immediately appealable is unconstitutional. We agree"). However, reading the case as a whole, particularly in light of its reliance on *C.B.* and *D.D.H.*, it is apparent to us that the *In re A.M.* court was concerned about the nature of the order rather than the type of hearing in which the order is entered. Accordingly, we conclude that we lack jurisdiction over this part of the appeal and are compelled to dismiss it. See also *In re A.Z.*, 325 Ill. App. 3d 722, 723-24 (2001).

The appropriate manner to invoke the jurisdiction of this court regarding an order that sets a permanency goal is to file a petition under Supreme Court Rule 306(a)(5) (166 Ill. 2d R. 306(a)(5)). Rule 306(a)(5) allows the permissive appeal of an order affecting the care and custody of a minor where appeal is not specifically provided for

elsewhere. 166 Ill. 2d R. 306(a)(5). Because an order setting a permanency goal is not appealable like a dispositional order, appeal is not provided for elsewhere in the rules; therefore, such an appeal falls within the plain language of Rule 306(a)(5). The supreme court made this explicit in *In re Curtis B.*, 203 Ill. 2d 53 (2002). It is noteworthy that its holding was not limited to orders entered during the course of permanency hearings; rather, it applies to orders setting permanency goals generally. See *In re Curtis B.*, 203 Ill. 2d at 63 ("Under Rule 306(a)(5), a party who wishes to petition the appellate court for leave to appeal a permanency *order* may do so" (emphasis added)). That the order in the instant case was entered in the course of the dispositional hearing does not mean that Rule 306(a)(5) does not apply, any more than it means that the order setting the permanency goal is appealable in the same manner as a dispositional order.

The dissent complains that we have created some sort of new hybrid order that is partly appealable as of right and partly appealable only with leave of the court. We have not. All that we have done is treat the order setting the permanency goal like any other order setting a permanency goal and the dispositional order like any other dispositional order. We see no relevance to the fact that they were entered on the same piece of paper. *In re A Minor*, 127 Ill. 2d 247, 260 (1989) ("An apple calling itself an orange remains an apple. Actions of the circuit court having the force and effect of injunctions are still appealable even if called something else"); *In re Petition to Incorporate the Village of Greenwood*, 275 Ill. App. 3d 465, 475 (1995) ("Whether an order is final for purposes of appellate court jurisdiction is determined by the substance, as opposed to the form, of the order"). Suppose instead that a contempt order that imposed no sanctions, and thus was not appealable (see *Vowell v. Pedersen*, 315 Ill. App. 3d 665, 666 (2000)), was entered at the same time as the dispositional order. Would it somehow become appealable simply because it was entered along with the dispositional order? Additionally, *In re F.S.*, 347 Ill. App. 3d 55 (2004), has no bearing on this case. Undoubtedly, the failure to mention an order in a notice of appeal is not fatal in all cases; however, this principle does not make appealable an otherwise nonappealable order.

■ Additionally, we note that in her conclusion, respondent requests that we reverse the trial court's order establishing the private guardianships. Respondent's argument concerning the dispositional hearing addresses only the setting of the permanency goal. Points not argued are waived. *People v. Godinez*, 91 Ill. 2d 47, 57 (1982). However, were we to address this issue, the evidence discussed in the first section of this opinion provides sufficient support for the trial court's decision to establish the guardianships.

## III. CONCLUSION

For the foregoing reasons, the order of the circuit court of Kane County finding the minors abused and neglected is affirmed. The portion of the appeal attacking the setting of the permanency goal is dismissed.

Appeal dismissed in part; judgment affirmed in part.

CALLUM, J., concurs.

JUSTICE McLAREN, concurring in part and dissenting in part:

I dissent from the portion of the majority's disposition that determines that we lack jurisdiction to consider the merits of a permanency order despite the fact that the permanency issue was entertained, considered, and ordered during the dispositional hearing. There is no case law that indicates that matters determined and ordered at the close of a dispositional hearing are not appealable, even if they are nonfinal. The only aspect of the dispositional order that *is* arguably final is the determination of the status of the child as a ward of the court, and even that is subject to future resolution and disposition. To say that a permanency order issued as part of a dispositional order is nonfinal and therefore nonappealable is Orwellian; while all aspects of the dispositional order are nonfinal, permanency orders are a little more nonfinal. Using the logic of the majority, several alternative results are possible. An appellant in any juvenile matter would be required to file a Rule 306 or Rule 307 petition for leave to appeal any and all portions of a dispositional order other than the adjudication of wardship, since the other portions are nonfinal orders. The appellate court's decision as to whether the issue raised is covered by Rule 306 or Rule 307 would determine whether the appellate court even has the ability to consider the issue and, if discretion is involved, the issue may not be resolved. For example, a nonpermanent injunction would be capable of review only under Rule 307, not Rule 303. If the injunction relates to custody, it may be subject to review under Rule 306. Under the logic of the majority, an appellate lawyer would have to analyze every aspect of a dispositional order to determine if it is nonfinal and if it is covered in some rule relating to the appealability of a nonfinal order.

The majority posits " 'that a permanency goal does not *finally* determine a right or status of a party but instead looks at the anticipated *future* status of the child.' " (Emphasis in original.) 349 Ill. App. 3d at 936, quoting *In re D.D.H.*, 319 Ill. App. 3d at 991. However, an examination of the dispositional order here reveals much "final

determination" and very little of "anticipated future status." The trial court found that the initial permanency goal was not appropriate and ordered DCFS to develop a permanency goal of guardianship. The court then set no date for a future permanency hearing and continued the case for 67 days for "closure of case." The trial court left no question as to what the *final* goal of this case was to be. The majority mechanically applies a general rule of law without looking at the facts and achieves an illogical, unsound result. At what point would respondent be able to appeal the permanency order? After the case is closed? Such a response is absurd, for once the case is closed there would be no reason for the entry of a permanency order.

The cases relied upon by the majority as authority involved a separation of powers issue relating to a statutory enactment that did not involve dispositional orders. See *In re A.M.*, 324 Ill. App. 3d 144 (2001) (and cases cited therein). These authorities are facially distinguishable from the facts and procedural posture of this appeal. There is no legal authority to support the majority's decision that the trial court's permanency order is not appealable when it was entered as part of a dispositional order.

To the contrary, and as the majority admits, the law is clear that a dispositional order is generally final and appealable. See 349 Ill. App. 3d at 935. In addition, the time to appeal from such an order is within 30 days of the entry of the order. See *In re C.S.*, 294 Ill. App. 3d 780, 786–87 (1998); see also 155 Ill. 2d R. 303(a)(1); 134 Ill. 2d R. 660(b).

Thus, according to the majority, a permanency order within a dispositional order is part of a dispositional order but is not a dispositional order. The permanency order is nonfinal and nonappealable as part of the dispositional order, but it is appealable as an interlocutory order under Rule 306(a)(5). The majority has created a new hybrid of an appealable order that is partly appealable and partly nonappealable; that is partly nonappealable as part of a final order and partly appealable as interlocutory; that is partly nonappealable as a matter of right and partly appealable with leave of court. Applying this logic across the board to all nonfinal aspects of dispositional orders would create an unreasonable burden on parties and courts to decipher what is appealable, by right, by leave of court, or not at all. In this case, in order for the respondent to appeal from the *entire* dispositional order, the majority would require that she file a notice of appeal as to paragraphs a-I, 1-7, and 12-13 of the dispositional order and a separate petition for leave to appeal as to paragraphs I, j, and 11.

Such a complex interpretation of the order appealed is the least desirable interpretation, if not the least likely to be correct. Occam's razor, *"Pluralitas non est ponenda sine neccesitate,"* or "plurality

should not be posited without necessity," as applied here, suggests that a simpler model is more likely to be correct than a complex one. William of Occam, ca. 1285-1349. Occam's razor is also called the principle of parsimony. Today, it is interpreted to mean, "the simpler the explanation, the better."

I agree with the majority when it states that one should look to the substance of the order rather than its form. The perverse hypothetical cited by the majority, involving a nonpunitive contempt order, actually would make the "final" dispositional order nonfinal and nonappealable until punishment was meted out or the court indicated of record that no punishment was to be imposed. Then the dispositional order that included the contempt order would be final and appealable. See *In re Marriage of Metz*, 233 Ill. App. 3d 50, 56 (1992). The contempt/dispositional order would not, as the majority contends, be final and appealable prior to a determination of the nature and extent of punishments. A more illuminating analogy would involve a judgment as to fewer than all parties or claims under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Were the majority's logic applied to such an order, the order would remain nonappealable, even after a final and appealable judgment was entered. Unless the appellant renewed the request for a Rule 304(a) certification and the trial court granted the request, the order would remain nonfinal and nonappealable. The majority's interpretation is clearly incorrect as applied to Rule 304(a) orders, and it should be. There is no reason for further delay or discretion in entertaining an appeal under such circumstances. See *Kral v. Fredhill Press Co.*, 304 Ill. App. 3d 988, 994 (1999) ("Once the trial court enters a final judgment disposing of all of the issues as to all of the parties, the previously entertained and otherwise final, but not appealable, [Rule 304(a)] order becomes both final and appealable"). Likewise, there is no reason for further delay or discretion with a permanency order that is part of a dispositional order.

The incorrect analogy aside, the substance of a permanency order is of the type that a juvenile court enters in a dispositional hearing. A permanency order is called a permanency order because it is usually the result of a permanency hearing, but its substance is little different from many of the findings and determinations made at a dispositional hearing. I submit that it is the majority that is applying form over substance. The majority's logic, when applied to other nonfinal aspects of dispositional orders, will create havoc with appellate jurisdiction and review of dispositional orders.

I would determine that we have jurisdiction to review the *entire* dispositional order, including the permanency order. The majority's vi-

sion of jurisdiction is too cramped and myopic. As a notice of appeal is to be liberally construed, the failure to specify an order in a notice of appeal does not preclude this court's review of that order " 'so long as the order that is specified *directly relates back* to the judgment or order from which review is sought.' " (Emphasis in original.) *In re F.S.*, 347 Ill. App. 3d 55, 68 (2004), quoting *Perry v. Minor*, 319 Ill. App. 3d 703, 709 (2001). It is appropriate to retain our jurisdiction to review an unspecified judgment if that judgment is a step in the procedural progression leading to the judgment specified in the notice of appeal. *F.S.*, 347 Ill. App. 3d at 69. I consider this interpretation of jurisdiction to be simpler and more appropriate. Clearly, in this case, the permanency order should be reviewable as part of the dispositional order because, not only is it a step in the procedural progression leading to the dispositional order, it *is* part of the dispositional order. I would determine that the trial court was correct in making the determination as to permanency, based upon respondent's statements indicating that she had no intention of complying with any of the other nonfinal aspects of the dispositional order. Under these circumstances, the trial court did not abuse its discretion in entering the permanency order at this stage of the proceedings.