*In re* FAITH B. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Perseta B., Respondent-Appellant).

Second District No. 2—03—1349

Opinion filed August 25, 2005.

572

Anna M. Wilhelmi, of Anna M. Wilhelmi Law Offices, P.C., of Aurora, for appellant.

John A. Barsanti, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kristine A. Karlin, of Mt. Prospect, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Respondent, Perseta B., appealed a series of orders of the circuit court of Kane County that resulted in placing her two minor children, Stephen B. and Faith B., in guardianships with two maternal aunts. Respondent alleged error in (1) the circuit court's decision to adjudicate the minors abused and neglected and (2) the circuit court's determination that private guardianship is the appropriate permanency goal. We disagreed with respondent's first contention and found we lacked jurisdiction regarding the second. See *In re Faith B.*, 349 Ill. App. 3d 930 (2004). Respondent appealed to the supreme court, which affirmed our decision as to the first point, but found jurisdiction present as to the second. *In re Faith B.*, 216 Ill. 2d 1 (2005). The supreme court then remanded the case to this court for consideration of respondent's second issue, and we now address it on its merits.

■ The setting of a permanency goal is governed by section 2—28 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—28 (West 2002)), which establishes a number of possible goals for a child. Relevant considerations include the following: "(1) the age of the children; (2) the options available for permanence; (3) the current placement of the children and the intent of the family regarding adoption; (4) the emotional, physical, and mental status or condition of the children; (5) the types of services previously offered and whether the services were successful and, if not successful, the reasons the services failed; (6) the availability of services currently needed and whether the services exist; and (7) the status of any siblings." *In re S.E.*, 319 Ill. App. 3d 937, 942-43 (2001). The Act directs that, whenever possible, the child's family ties should be preserved. 705 ILCS 405/1—2(1) (West 2002). However, it also sets forth other considerations, including the welfare of the child and the need to establish permanency "at the earliest opportunity." 705 ILCS 405/1—2(1) (West 2002). The trial court possesses broad discretion in setting a permanency goal, and its decision will not be disturbed unless it is contrary to the manifest

weight of the evidence. *In re D.S.*, 317 Ill. App. 3d 467, 472 (2000); *In re K.H.*, 313 Ill. App. 3d 675, 682 (2000). A decision is contrary to the manifest weight of the evidence only where an opposite conclusion is clearly apparent. *In re M.M.*, 337 Ill. App. 3d 764, 779 (2003).

Respondent's chief complaint is directed at the time frame in which the events that led to the setting of the permanency goal transpired, which she terms as "mind-boggling." She points out that the alleged events upon which the State's petition was based occurred in July 2003. The State filed its petition in August 2003. On November 20, 2003, following a dispositional hearing, the permanency goal of guardianship was set. While this short time frame is certainly outside of the norm in cases like this, that fact in no way undermines the trial court's decision. Cases involving the care and custody of minors should be resolved as quickly as possible. Indeed, they must be, given the legislature's clear directive that permanency be attained as early as possible. 705 ILCS 405/1—2(1) (West 2002). Thus, it is not the speed with which the judgment was rendered that we must examine—for that may have been a salutary thing—but the rationale of the decision itself.

In deciding on the goal of guardianship, the trial court essentially reasoned negatively, eliminating other goals for various reasons until only guardianship was left. The court ruled:

"Well, I am going to comment on this at this point in time, because I think at the dispositional hearing the Court does have to make a determination on the goal, and I think guardianship would be the appropriate goal in this case, at least at this point in time as the mother has indicated that she does not have a mental health issue and indicated—has indicated that she does not wish to seek any treatment. So that means any kind of return home goal would be ruled out. And, likewise, certainly because the children are in relative placement here, we are not talking about any kind of substitute care pending termination of parental rights. An adoption would be ruled out, because these children have a long term bond with their mother that I do not believe at this point in time that this Court would ever find that that should be disrupted. I mean, certainly I would need significant evidence to find that the parental relationship would need to be disrupted, which leaves us at the goal of guardianship."

We fully endorse the trial court's reasoning.

■ Respondent does not, of course, challenge the trial court's reasoning regarding the elimination of the more disruptive goals of adoption and termination of parental rights. We note that the trial court acknowledged the significant relationship between respondent and the minors in eliminating adoption. She does, however, assert that

the trial court should have given her another opportunity to seek care and services before disregarding the goal of return home. While respondent's point does not entirely lack merit, we cannot say that a conclusion opposite to that drawn by the trial court is clearly apparent, given respondent's refusal or inability to work with DCFS personnel as well as her definitive in-court statements that she would not seek care. Therefore, we cannot say that eliminating the return-home goal was contrary to the manifest weight of the evidence.

Moreover, viewing the evidence as a whole, we cannot say that a conclusion opposite to the selection of private guardianship is clearly warranted, as is required to reverse a decision of a trial court under the manifest-weight standard of review. *In re M.M.*, 337 Ill. App. 3d at 779. Viewed in its entirety, the evidence shows that respondent has significant mental-health problems that have led to erratic behavior, which, at some times, has impacted directly on the minors. Respondent has refused treatment, been unable to cooperate with DCFS personnel, and stated that she has no problem and needs no treatment. That respondent can point out some conflicting evidence, such as her testimony that she tried calling DCFS several times, is insufficient for us to disturb the decision of the trial court. See *Wencordic Enterprises, Inc. v. Berenson*, 158 Ill. App. 3d 913, 918 (1987) ("We will reverse the judgment of the trial court only when its decision is contrary to the manifest weight of the evidence [citation], not when the evidence is merely conflicting").

In light of the foregoing, we affirm the judgment of the circuit court of Kane County.

Affirmed.

CALLUM, J., concurs.

JUSTICE McLAREN, specially concurring:
I specially concur because I wish to emphasize a point.

In the previous opinion of this court, the majority stated the following:

"The dissent complains that we have created some sort of new hybrid order that is partly appealable as of right and partly appealable only with leave of the court. We have not. All that we have done is treat the order setting the permanency goal like any other order setting a permanency goal and the dispositional order like any other dispositional order. We see no relevance to the fact that they were entered on the same piece of paper." *In re Faith B.*, 349 Ill. App. 3d 930, 937 (2004).

On appeal from this court, Justice Freeman, writing for the majority, explained why permanency orders are not final and appealable:

"Specifically, the lynchpin of our determination that permanency orders are not final and appealable is the fact that they are only temporary and subject to modification." *In re Faith B.*, 216 Ill. 2d at 17.

Chief Justice McMorrow, specially concurring, said:

"In the case at bar, respondent, Perseta D., did not appeal from a 'permanency order.' Rather, she sought review of the appropriateness of a permanency *goal*, which was set at the dispositional hearing and made a part of a dispositional order. ***

*** In my view, the majority's holding is too narrow. I would hold that permanency goals are appealable as of right when they are part of the dispositional order, which is an appealable order.

The permanency goal selected at the dispositional hearing is an intrinsic part of the dispositional order. Pursuant to section 2—21(2) of the Juvenile Court Act (705 ILCS 405/2—21(2) (West 2002)), once a court determines a minor to be abused, neglected or dependent, 'the court shall then set a time not later than 30 days after the entry of the finding for a dispositional hearing.' At the dispositional hearing, the court must determine, in accord with the requirements set forth in section 2—22 of the Act, whether it is in the best interests of the minor(s) and the public that the minor(s) be made wards of the court. 705 ILCS 405/2—22(1) (West 2002). In addition, the court *must* decide 'the proper disposition best serving the health, safety and interests of the minor[s] and the public' and consider 'the permanency goal set for the minor[s] ***' *** [citation]." (Emphasis in original.) *In re Faith B.*, 216 Ill. 2d at 19-20 (McMorrow, C.J., specially concurring).

Dispositional orders are deemed to be final and appealable for purposes of appeal even though they may be interlocutory in nature. See *In re J.N.*, 91 Ill. 2d 122, 127 (1982).

I submit that the supreme court, if it failed to adopt the analysis of Chief Justice McMorrow and make a permanency goal appealable as a matter of right when it is part of a dispositional order, has created a new hybrid order that is partly appealable as of right and partly appealable only with leave of the court. The distinction drawn between the two types of orders, that one is *final* though essentially temporary and subject to modification and one is *not final* because it is essentially temporary and subject to modification, is not only irrational but fails to serve any purpose other than the unreasonable and unnecessary requirements of petitioning for review of a portion of the *final* order and considering said petition to determine if a part of the *final* order should be entertained by the appellate court.

I do not believe that the majority of the supreme court intended such a convoluted and impractical interpretation; instead, it could only have adopted Chief Justice McMorrow's interpretation *sub silencio*. The notice of appeal in this case indicates that only one order, the dispositional order, was appealed. If the supreme court believed there were two discrete, individual orders, then it necessarily had to determine that the permanency order was not appealable because it was not set forth in the notice of appeal. "Supreme Court Rule 303(b)(2) (155 Ill. 2d R. 303(b)(2)) requires a notice of appeal to 'specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court.' " *In re D.R.*, 354 Ill. App. 3d 468, 471 (2004). However, it is appropriate to retain jurisdiction to review an unspecified judgment if it is a step in the procedural progression leading to the judgment specified in the notice of appeal. *In re F.S.*, 347 Ill. App. 3d 55, 69 (2004). The majority in the original appellate opinion addressed the issue above and determined that the failure to specify the order appealed from was not at issue in this case when it said:

> "Additionally, *In re F.S.*, 347 Ill. App. 3d 55 (2004), has no bearing on this case. Undoubtedly, the failure to mention an order in a notice of appeal is not fatal in all cases ***." *In re Faith B.*, 349 Ill. App. 3d at 937.[1]

Thus, the supreme court was apprised of this issue and had the opportunity to determine that the permanency order was not part of the dispositional order, nor a step in the procedural progression leading to the dispositional order, and should have been separately set forth in the notice of appeal. The supreme court could have concluded that, contrary to this court's majority opinion, *In re F.S.* did apply and that jurisdiction was lacking on that basis. Having failed to discuss this fatal error, the supreme court must have concluded that such a review was unnecessary because jurisdiction had attached consistent with Chief Justice McMorrow's analysis. This is the only rationale that would allow review of the permanency order based upon the notice of appeal filed in this appeal.

There is another problem involved if a permanency order is discrete and appealable only in its own right. The appellant must logi-

---

[1]"The purpose of a notice of appeal is to inform the prevailing party that the unsuccessful party has requested review of the judgment complained of and is seeking relief from it. *McGath v. Price,* 342 Ill. App. 3d 19, 30, 793 N.E.2d 801 (2003). As such, Supreme Court Rule 303(b) (155 Ill. 2d R. 303(b)) states that a notice of appeal 'shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court.' " *In re F.S.*, 347 Ill. App. 3d at 68.

cally file a notice of appeal seeking review of *all* orders that are individually identifiable, regardless of finality. See 155 Ill. 2d R. 303(b)(2). Then the appellant must file pleadings in the alternative, seeking the appellate court's determination as to the finality of the sundry orders and allowance of the appeal if the court determines that it is not an appeal as a matter of right. Failure to do so could constitute ineffective assistance of counsel, should the appeal not be perfected because of counsel's failure to properly invoke appellate jurisdiction as to the issues raised on appeal.

I reiterate:

"Such a complex interpretation of the order appealed is the least desirable interpretation, if not the least likely to be correct. Occam's razor, '*Pluralitas non est ponenda sine neccesitate,*' or 'plurality should not be posited without necessity,' as applied here, suggests that a simpler model is more likely to be correct than a complex one. William of Occam, ca. 1285-1349. Occam's razor is also called the principle of parsimony. Today, it is interpreted to mean, 'the simpler the explanation, the better.' " *In re Faith B.*, 349 Ill. App. 3d at 939-40 (McLaren, J., concurring in part and dissenting in part).

