*In re* D.S., a Minor.

Fifth District    No. 5—97—1099

Opinion filed September 23, 1999.

Curtis L. Blood, of Collinsville, for appellant.

William R. Haine, State's Attorney, of Edwardsville (Stephen E. Norris and Sharee Langenstein, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

This case involves an appeal from a dispositional order entered in a juvenile court proceeding which denied Mary Beth S. visitation with her minor daughter, D.S. On appeal, Mary Beth contends that the trial court abused its discretion in terminating visitation between Mary Beth and D.S. and in failing to order at least supervised visitation. We affirm.

## FACTS

D.S. was born on July 5, 1983. She has one brother, S.S., who is two years older. John S. sexually abused D.S. beginning sometime in 1992 and continuing until D.S. disclosed the abuse to her mother in 1995. The abuse included numerous acts of sexual penetration. John S. pled guilty to aggravated criminal sexual assault and was sentenced to six years in the Department of Corrections.

Mary Beth suffered a debilitating stroke in 1987, and she has serious health problems. She was physically dependent on John S. for a number of years. While she recovered to some extent, she continues to experience numerous health problems. After D.S. told Mary Beth that John S. was abusing her, Mary Beth obtained an interim order of protection barring John from the marital home and from having contact with D.S. On September 27, 1995, the State filed a petition for adjudication of wardship on behalf of D.S., charging that she had been sexually abused by her father. On October 31, 1995, the State filed an amended petition, alleging neglect of D.S. on the basis that Mary Beth did nothing to stop the abuse. The State also filed a petition for adjudication of wardship on behalf of S.S., alleging that S.S. was being raised in an injurious environment. On December 12, 1995, a plenary order of protection was granted.

On January 23, 1996, a second amended juvenile petition was filed, alleging the previous acts of abuse and/or neglect by the parents of D.S. with an additional allegation, claiming that Mary Beth struck D.S. in the head and knocked her into the wall. D.S. required medical attention after this incident. D.S. began living with a foster family after this incident. On April 26, 1996, D.S. was adjudicated abused and neglected and was placed in the temporary custody of the Department of Children and Family Services (Department). The trial court found that Mary Beth abused D.S. because she failed to protect D.S. from John's sexual abuse and because she violated the order of protection by taking D.S. into John's presence after the order of protection was granted.

On September 10, 1997, a dispositional order was entered by agreement of the parties. Mary Beth waived guardianship and agreed that

D.S. would remain in foster care in exchange for supervised visitation with D.S. D.S. was ordered to cooperate with and attend counseling as recommended by the Department and to attend visits with Mary Beth as arranged by the Department. Initially, some of the visits took place, but, ultimately, D.S. refused to attend visits with Mary Beth after a Department caseworker told D.S. that she could not be forced to visit with her mother. On November 5, 1997, Mary Beth filed a posttrial motion to vacate the dispositional order of September 10, 1997, on the basis that she had not received the "benefit of the bargain" because D.S. refused to visit with her. Mary Beth alleged that because the Department caseworker consistently told D.S. that she could not be forced to do anything against her will, "the promise of visitation was meaningless and possibly fraudulent."

A dispositional hearing was conducted on December 10, 1997. Mary Beth, John, and D.S. were present and represented by counsel. Three witnesses—Paula Cobb (the Department caseworker in charge of the instant case), D.S., and Mary Beth—testified. Paula Cobb testified that D.S. suffered emotional trauma after each visit and that D.S. cried on the way home. Cobb explained that D.S. resents the fact that Mary Beth continues to maintain a relationship with John.

D.S. testified that she had no desire to visit with her mother because her mother hurt her. D.S. explained that she did nothing wrong, but anytime she is around her mother, Mary Beth makes her feel like the abuse was her fault. D.S. believes that her mother knew that the abuse was occurring but did nothing to stop it. D.S. testified that she was happy with her foster family.

Mary Beth testified about her desire to see her daughter because she loves her. She testified that she did not condone her husband's abuse of D.S. and explained what steps she took to ensure that it stopped, including getting an order of protection. She admitted that she allowed D.S. to be near John on one occasion in order to get baked goods from John at Christmastime. Mary Beth explained that on that occasion she tried to avoid direct contact between D.S. and John by sending D.S. into a nearby grocery store before John arrived. Mary Beth explained that she is in the middle because S.S. wants a relationship with his father, but D.S. does not. According to Mary Beth, D.S. does not understand why it is necessary for Mary Beth to have contact with John in order to facilitate the relationship between S.S. and John. Mary Beth admitted she has no immediate plans to divorce John. She also stated, "[If a divorce occurred,] it would be amicable, because I didn't [sic] feel it would be right to tear up the kids."

Exhibits were introduced, including a letter from Donya Adkerson, M.A., L.C.P.C., director of Alternatives Counseling, Inc., to the as-

sistant State's Attorney handling the instant matter. Adkerson was D.S.'s counselor. In this letter, Adkerson opined that "it is therapeutically inadvisable for [D.S.] to have visitation with her mother or father." She outlined numerous trauma symptoms from which D.S. suffers, including insomnia, nightmares, and low self-esteem, which are triggered by contact with the parents. Adkerson concluded, "To force this child into a visitation that causes her such pain would be to echo the messages of her victimization; telling her in action that she does not matter; that her feelings and safety are insignificant concerns; and that those who are in authority over her will do her harm rather than provide her comfort and safety."

After considering all of the evidence, the trial court denied visitation, finding that it is not in the minor's best interest. In making this determination, the trial court specifically referred to People's exhibit No. 4, the letter from Donya Adkerson, which concluded that it would be therapeutically inadvisable for D.S. to have visitation with her mother. The trial court ordered that both D.S. and Mary Beth receive counseling, and the court ordered a review of the matter in six months.

On December 15, 1997, Mary Beth filed a notice of appeal from the order of adjudication entered on April 26, 1996, and any amendment thereof subsequently entered; from the order entered December 10, 1997, denying portions of her posttrial motion; and from the December 10, 1997, dispositional order. John filed a motion for appointment of counsel on appeal. The trial court granted his motion.

## ANALYSIS

### I. JURISDICTION

The first issue we must address is whether we have jurisdiction to hear this case. John contends that his motion for appointment of counsel should be considered a timely and unequivocal written expression of his intention to appeal the December 10, 1997, order and that any defects in the document did not affect jurisdiction. The State replies that John never filed a notice of appeal and that his "Motion to Appoint Counsel on Appeal" lacks certain substantive elements, such as from which order John appeals, as required by Supreme Court Rule 303 (155 Ill. 2d R. 303), so that jurisdiction did not vest in the appellate court.

■ Here, the trial court specifically stated that its oral order of December 10, 1997, was final and appealable, and the court informed John and Mary Beth of their right to appeal and the procedure involved. The trial court was correct, because dispositional orders from juvenile court are generally final and appealable. See *In re Smith*, 80 Ill. App. 3d 380, 399 N.E.2d 701 (1980). We agree with the State

that John's "Motion to Appoint Counsel on Appeal" is deficient and, accordingly, dismiss his appeal. Since Mary Beth's notice of appeal was sufficient to vest this court with jurisdiction as an appeal from a final order, all arguments raised in the brief submitted on behalf of Mary Beth will be addressed.

## II. VISITATION

■ Mary Beth contends that the trial court abused its discretion in terminating visitation and in failing to order at least supervised visitation. The State responds that the trial court's order restricting visitation is supported by the evidence and is legally sound. We agree with the State.

Section 2—22(1) of the Juvenile Court Act of 1987 (Act) provides in pertinent part:

> "At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court, and, if he is to be made a ward of the court, the court shall determine the proper disposition best serving the interests of the minor and the public." 705 ILCS 405/2—22(1) (West 1994).

Section 2—23(3)(iii) of the Act provides for a court to "enter any other orders necessary to fulfill the service plan, including, but not limited to, *** (iii) visiting orders." 705 ILCS 405/2—23(3)(iii) (West 1994). Accordingly, we believe that when a minor is the ward of a court and under its protection, the above-cited provisions give the juvenile court the authority to vacate any dispositional order upon a finding that a change in circumstances has occurred warranting such an action. See *In re P.P.*, 261 Ill. App. 3d 598, 601-02, 633 N.E.2d 965, 967-68 (1994). The trial court had the authority, pursuant to section 2—23 of the Act, to change visitation in the manner in which it did. The instant case is an example of a proper dispositional order regarding visitation.

The question we must now consider is whether the circumstances and best interests of D.S. warranted the change in the dispositional order, requiring that D.S. need not attend visits with Mary Beth. Such a determination is left to the sound discretion of the trial court and will not be reversed unless it is against the manifest weight of the evidence. See *In re P.P.*, 261 Ill. App. 3d at 605, 633 N.E.2d at 970. Dispositional orders are to be made in the child's best interests. See *In re Beatriz S.*, 267 Ill. App. 3d 496, 500, 641 N.E.2d 953, 956 (1994).

In the instant case, the trial court heard evidence from D.S. that her mother, Mary Beth, slammed her head into a wall and put her in close proximity to her father, who had sexually abused her from age 9 until age 12, in violation of an order of protection. D.S. was adamant that she did not want to visit with her mother, because her mother

made her feel like the sexual abuse to which she was subjected was somehow her fault. The record also reflects that Mary Beth has no intention of divorcing John and will most likely continue a relationship with him. Mary Beth testified that she feels compelled to maintain a relationship with John because her son, S.S., wants a relationship with his father. She also testified that if she does divorce John, it would be amicable because she does not "feel it would be right to tear the kids up." Mary Beth apparently does not recognize that D.S. has already been torn apart during the three years she was sexually molested by her father and that this family, for all practical purposes, is no family at all, at least in the eyes of D.S.

In refusing visitation, the trial court relied heavily on People's exhibit No. 4, the letter written by Donya Adkerson, the director of Alternatives Counseling, Inc., who stated that it is "therapeutically inadvisable" for D.S. to have visitation with her mother. The trial court properly considered the best interests of D.S., and we cannot say that the trial court's ruling was an abuse of discretion, especially in light of the fact that the trial court ordered a review of the matter in six months and ordered counseling for both D.S. and Mary Beth. We note that, after oral argument, the parties submitted certified copies of the circuit court record, which indicates that a six-month review was not conducted. While that matter is not on appeal at this time, we would, nevertheless, encourage a review to be conducted to conform with the order of the trial court.

For the foregoing reasons, we affirm the dispositional order of the trial court refusing to order visitation between D.S. and Mary Beth.

Appeal dismissed in part; judgment affirmed.

CHAPMAN and HOPKINS, JJ., concur.