*In re* BRANDON S. *et al.*, Minors, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee, v. Terry S. *et al.*, Respondents-Appellants).

First District (4th Division) No. 1—00—2244

Opinion filed June 13, 2002.

Lehrer & Redleaf (Diane L. Redleaf, of counsel), and Children & Family Justice Center, Northwestern University School of Law (Bruce A. Boyer, of counsel), both of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Eve Reilly, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Kathryn O. Gordon, of counsel), guardian *ad litem*.

JUSTICE KARNEZIS delivered the opinion of the court:

Respondents Terry and Lisa S. appeal from a July 6, 2000, order of the circuit court denying their motion for the return home of their minor children, Adam and Brandon S., or, in the alternative, unsupervised visitation with the children. Respondents argue that the trial court's decision was contrary to the manifest weight of the evidence because the court erred in (1) making respondents' admission that Brandon was abused a condition of family reunification and (2) determining that respondents' extensive therapy had been ineffective and the admission was necessary in the best interests of the children. We dismiss the appeal for lack of jurisdiction.

In March 1998, four-month-old Brandon sustained a complex fracture to his skull and a fracture of his left femur. Lisa claimed that the injuries occurred when she was showering with Brandon and he slipped from her arms twice. The Illinois Department of Children and Family Services (DCFS) took protective custody of Brandon and 20-month-old Adam. The State filed a petition for adjudication of wardship alleging that Brandon had been physically abused and that both boys were neglected. DCFS put the children in foster care with Terry's brother and sister-in-law pending an adjudication hearing. During the hearing, the court heard testimony from a medical expert that

Brandon's injuries were caused by child abuse. The expert opined that neither the complex skull fracture nor the femur break could have resulted from a simple fall in the bathtub. The femur fracture could be caused by someone jumping on the leg or by a fall from a seven-story building while the skull fracture could have been caused by hitting the edge of a table or from a baseball bat, not from falling on a flat surface.

Based on the evidence presented, the court found Brandon to be an abused minor and that there was a substantial risk of physical injury to both Brandon and Adam. On August 31, 1998, the court made Brandon and Adam wards of the court, appointed DCFS as their guardian with the right to place the children with a substitute care provider, and ordered that respondents' visits with their children be supervised. DCFS placed the children in foster care with their grandmother. Respondents did not appeal the court's disposition order or the adjudication of abuse and neglect. The court then entered a permanency order setting as the goal return home of the children within 12 months. Pursuant to a DCFS service plan, respondents participated in parenting classes and attended counseling sessions with a therapist. Respondents were deemed to be making satisfactory progress under the service plan.

On April 8, 1999, and again on July 8, 1999, respondents filed a motion for unsupervised visitation with their children. On March 8, 2000, respondents substituted new counsel. They also filed a motion for a declaratory judgment as to the legal validity of the State's requirement that respondents admit to abuse as a prerequisite to reunification with their children. After argument on April 9, 2000, the court found that the matter was not ripe for adjudication. The court agreed that respondents could not be compelled by the court to incriminate themselves but, given that the requirement was merely the State's position rather than a court-imposed condition of reunification, there was no controversy yet.

Respondents' new counsel adopted the motions for unsupervised visitation and was given leave by the court to file an additional motion to that effect. On May 31, 2000, respondents filed a motion for the return home of the children or, in the alternative, unsupervised visitation. On July 6, 2000, after a full hearing during which therapists, medical experts and caseworkers testified, the court denied the motion. The court found that the law of the case was that child abuse occurred and that, because respondents had not addressed the court's factual findings and continued to refer to Brandon's injuries as accidental, therapy had been ineffective. The court stated that it was not asking respondents to admit their abuse to the court or to their

therapist, "but at least they have to admit it to themselves. Based upon their own testimony, I do not believe they have." The court found it in the best interests of the children to deny the motion for return home or unsupervised visits. Respondents appeal from that order.

■ Before addressing respondents' arguments, we must be certain of our jurisdiction. *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 308 Ill. App. 3d 33, 39, 719 N.E.2d 143, 147 (1999). Except for appeals from delinquency judgments, "[i]n all other proceedings under the Juvenile Court Act [of 1987 (705 ILCS 405/1—1 *et seq.* (West 1998))], appeals from *final* judgments shall be governed by the rules applicable to civil cases." (Emphasis added.) 134 Ill. 2d R. 660(b). Respondents' jurisdictional statement asserts that our jurisdiction over this appeal lies under Supreme Court Rule 301 (appeals from final judgments of a circuit court in a civil case as a matter of right) and Supreme Court Rule 303 (timing of the filing of the notice of appeal after entry of the final judgment). 155 Ill. 2d Rs. 301, 303. The State argues that the order at issue here was not a final order and that, therefore, we do not have jurisdiction to hear the appeal. We agree.

■ A disposition order from the juvenile court is generally considered final and appealable. *In re D.S.*, 307 Ill. App. 3d 362, 365, 717 N.E.2d 497, 500 (1999). A disposition order concerning a ward of the court may, among other options, order that the child remain with his parents, place the child with a relative or other legal guardian, commit the child to the DCFS for care and service, restore the child to his parents, or order that the child be partially or completely emancipated. 705 ILCS 405/2—23 (West 1998). Here, the court's August 31, 1998, disposition order made Brandon and Adam wards of the court, appointed DCFS as their guardian and allowed only supervised visitation with respondents. Respondents did not appeal from that order. Rather, eight months later, citing respondents' satisfactory progress under the DCFS service plan, respondents filed a motion requesting unsupervised visitation and one year after that, a second motion requesting that the children be returned home because the parents were "ready" or, in the alternative, that unsupervised visitation be allowed.

■ Any party interested in a minor may apply to the court for a change in custody of the minor or restoration of the minor to the custody of his parents. 705 ILCS 405/2—28(4) (West 1998). Unless the disposition order expressly provides that it operates to close the pending petition proceedings, a court may modify a disposition order at any time if warranted by a change in circumstances. 705 ILCS 405/2—

23(2) (West 1998). Such a modified disposition serves to vacate the original disposition and supercede it. *In re D.S.*, 307 Ill. App. 3d at 366, 717 N.E.2d at 500. Here, respondents requested modification of the existing disposition order but the court denied that request. The question is whether denial of respondents' motion constitutes a final appealable disposition order.

■ A final judgment "fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *In re T.M.*, 302 Ill. App. 3d 33, 37, 706 N.E.2d 931, 934 (1998). Any "matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the order." *In re T.M.*, 302 Ill. App. 3d at 37, 706 N.E.2d at 934. The order at issue here is clearly not a final appealable order. The order denied the motion for modification and therefore did not change the status quo. The disposition of the case did not change and the parties' status quo continued unaffected. The order did not permanently determine the rights of the parties or definitely resolve any issue in the case. The ultimate issue, the return home of the children, remained to be determined.

Respondents' motion, in essence, jumped the gun on the next scheduled permanency hearing and the order resulting therefrom could be analogized to an order resulting from a permanency hearing. After an initial permanency hearing setting a permanency goal, such as the return home of the children within 12 months, the court must conduct a permanency hearing at least every six months until the court finds that the goal has been achieved. 705 ILCS 405/2—28(2) (West 1998). Section 2—28(3) of the Juvenile Court Act provides in part that any order entered following a permanency hearing "shall be immediately appealable as a matter of right under Supreme Court Rule 304(b)(1)." 705 ILCS 405/2—28(3) (West 1998). However, a permanency goal is not a final order because it " 'does not *finally* determine a right or status of a party but instead looks at the anticipated *future* status of the child.' " (Emphasis in original.) *In re Curtis B.*, 325 Ill. App. 3d 393, 396, 758 N.E.2d 312, 314 (2001), quoting *In re D.D.H.*, 319 Ill. App. 3d 989, 991, 749 N.E.2d 31, 33-34 (2001). Therefore, following decisions of the Fourth and Fifth Districts, we recently held that the portion of section 2—28(3) which allows the immediate appeal of a nonfinal permanency order under Rule 304(b)(1) is unconstitutional because it violates the separation of powers clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1). *In re Curtis B.*, 325 Ill. App. 3d at 398, 758 N.E.2d at 315 (following *In re D.D.H.*, 319 Ill. App. 3d 989, 749 N.E.2d 31 (2001), and *In re C.B.*, 322

Ill. App. 3d 1011, 750 N.E.2d 1271 (2001)). Similarly, the court's nonfinal order resulting from the hearing on respondents' motion is not appealable.

■ Respondents argue that the court's determination that respondents have to admit abuse before the children can be returned home serves to effectively prevent family reunification given that respondents have stated categorically that they will never admit that Brandon was abused and that, therefore, the court's order is a final determination of respondents' reunification with their children. We disagree. As respondents correctly state, they have a fifth amendment right against self-incrimination and cannot be ordered by the court to admit that Brandon was abused as a condition of family reunification. See *In re L.F.*, 306 Ill. App. 3d 748, 714 N.E.2d 1077 (1999). However, the court did not order respondents to admit abuse. The court acknowledged respondents' right against self-incrimination and stated that it did not want respondents to admit the abuse to the court or to their therapist. Rather, the court wanted respondents to admit it only to themselves. The court found that respondents' long-term therapy had been ineffective in helping them confront the abuse findings and that, with a new therapist, respondents might be able to resolve the issue. Presumably, the realization that abuse might have occurred would be evident in successful therapy sessions, regardless of whether it was expressly articulated. Since the court did not make self-incrimination a condition of reunification, respondents' argument fails.

■ Even had we not dismissed this case for lack of jurisdiction, we would have been unable to hear this appeal. Counsel for respondents filed a motion for correction of respondents' appellate briefs, admitting that respondents lied to the trial court about their contact with their children. In response, the public guardian filed a motion requesting that we dismiss the appeal and the State filed a motion requesting that we remand the case to the trial court. Respondents had left the court with the impression that, pursuant to DCFS's order, the children resided with their aunt and uncle and, later, their grandmother. Respondents told the court of their exhaustive efforts to visit the children and to maintain a close connection with them despite the separation, and of the drain that the daily commute between their home and the children's residence was for everyone involved. These statements were fabrications. In actuality, unbeknownst to the court or DCFS, the children resided with their parents for most of the time that the children were wards of the court. Any determinations by the court and DCFS regarding respondents' progress under the service plan and the children' future were based on a nonexistent set of circumstances.

Given that the court's decision was based on false testimony and on testimony from therapists and caseworkers who had been similarly misled, it would be impossible for this court to determine whether the court's decision was against the manifest weight of the evidence.

Accordingly, for the foregoing reasons, this appeal is dismissed for lack of jurisdiction. The public guardian's motion to dismiss the appeal on the basis of respondents' admitted perjury is denied as moot and its motion for sanctions against respondents is denied. The State's motion for remand is denied as moot.

Dismissed.

HARTMAN and THEIS, JJ., concur.