NO. 4-06-0239          Filed 12/28/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: JUSTIN L.V., a MINOR, | ) | Appeal from |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Livingston County |
| v. | ) | No. 05JD66 |
| JUSTIN L.V., | ) | |
| Respondent-Appellant. | ) | Honorable |
| | ) | Jennifer Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

Respondent, Justin L.V., a minor, admitted he engaged in certain criminal conduct.  As a result, the trial court adjudicated him a delinquent minor and ordered him committed to the Illinois Department of Corrections, Juvenile Division (JDOC).  Within 60 days of entering its order of commitment, the court reviewed respondent's progress and determined that respondent should remain committed.  Respondent appeals.  We dismiss in part and affirm in part.

I. BACKGROUND

On August 18, 2005, the State filed a petition for adjudication of wardship, requesting that respondent, age 16, be adjudicated a delinquent minor pursuant to section 5-105(3) of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/5-

105(3) (West 2004)). The State alleged that between August 13, 2005, and August 15, 2005, respondent committed the offenses of unlawful possession of a stolen vehicle in two counts (625 ILCS 5/4-103(a)(1) (West 2004)) and the offense of criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2004)).

On August 24, 2005, the trial court entered an order for respondent's detention in the McLean County Juvenile Detention Center for four days until respondent's seventeenth birthday, at which time he was transferred to the Livingston County jail until his arraignment on September 13, 2005. At arraignment, the State made an oral motion to amend the petition to add seven counts, which alleged respondent committed seven additional offenses between June 2005 and August 2005. Specifically, the State alleged respondent committed three counts of criminal trespass to a vehicle (720 ILCS 5/21-2 (West 2004)), two additional counts of criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2004)), one count of burglary (720 ILCS 5/19-1(a) (West 2004)), and one count of unlawful possession of cannabis (720 ILCS 550/4(a) (West 2004)). The trial court allowed the State's motion.

Respondent admitted each allegation except one count of criminal damage to property to which he pleaded not guilty. The trial court accepted the factual basis for the remaining counts,

- 2 -

found respondent's admissions were made knowingly and voluntarily, and adjudicated respondent a delinquent minor. The court entered a home-confinement order pending sentencing. At an October 11, 2005, status hearing, respondent admitted the remaining count of criminal damage to property. After considering the factual basis of that charge, the trial court accepted respondent's admission.

On October 25, 2005, the trial court held a sentencing hearing. After hearing recommendations from the State and from respondent, the court stated that it was sentencing respondent to 60 days in JDOC. The court further stated that in 60 days, it would consider vacating the JDOC commitment and placing respondent "on some kind of probation." However, respondent's counsel advised the court that it was not authorized to sentence respondent to JDOC for a definite period of time:

> MR. MASON [(respondent's counsel)]: Actually I don't think you can sentence him to a specific time. You sentence him to DOC to return on December 20.
>
> THE COURT: All right.
>
> MR. MASON: At which time you can vacate.
>
> THE COURT: Vacate that order or I can send him back depending on how things are

going.

                        * * *

THE COURT: Since I'm setting this for review, should I advise him of his appeal rights now? I'm not sure how that works.

MR. MASON: Yeah[, p]robably[,] because you wouldn't resentence him.  You would either vacate the sentence or return him." The court also explained its intention to respondent:

"THE COURT: I will tell you this.  I will bring it back in 60 days.  I'm not going to argue with you about it. [Sixty] days is enough time for you to start getting help on your substance abuse, to look into your education and think about what your actions have been.  And if what you are telling me is true, you can walk out of that prison in 60 days on that date; and you can put in place things that are going to keep you on the right track.

                        * * *

All right.  So that's going to be the sentence."

                        - 4 -

The written order (1) provided that respondent's commitment was necessary to protect the public, (2) directed the sheriff to transport respondent to the appropriate reception center, and (3) required respondent to return to court on December 20, 2005, "for further court proceedings." The trial court also advised respondent of his right to appeal and admonished him pursuant to Supreme Court Rule 605. 210 Ill. 2d R. 605. Neither the order of commitment entered by the court nor the docket entry entered following the hearing specified a term of commitment.

Between October 26, 2005, and November 10, 2005, respondent was housed at the Illinois Youth Center in St. Charles. He was transferred to the Illinois Youth Center in Harrisburg on November 10, 2005, to begin individualized treatment. According to the warden and the counselor at St. Charles, in letters presented to the trial court at the December 20, 2005, hearing, respondent was "cooperative," "exhibit[ed] a positive attitude," and was "a positive leader." However, after arriving at Harrisburg, respondent's behavior was less positive. On November 11, 2005, respondent received a "major disciplinary report" for filing a false claim that his roommate had sexually assaulted him. As punishment, respondent received seven days in confinement. In a December 5, 2005, report, the warden and the counselor at Harrisburg indicated that respondent's "weekly level performance has

been level B and C," with level A being the highest.  In addition to these reports, the State reported to the court at the December 20, 2005, hearing that respondent had received another disciplinary ticket on December 12, 2005, for allegedly stealing three books from a teacher.

At the December hearing, respondent's counsel argued that the October commitment to JDOC be vacated, stating:

> "MR. MASON: *** [W]e would recommend
> that [Justin] be released on probation. ***
>
> *** [W]e would request that the [c]ourt
> vacate the commitment to [JDOC] and release
> him to his parents on a term of probation
> with a term of home confinement if the
> [c]ourt believes that would be reasonable to
> start things off with."

However, the State argued for respondent's continued incarceration, emphasizing respondent's negative performance:

> "MR SPRAY [(Court Services)]: [The
> counselor] was I guess quite amazed that
> someone in Justin's position would have two
> [disciplinary tickets] knowing that he's
> going before a judge. ***
>
> He was pretty surprised that he had that

type of incident reports written up on him knowing full well the [c]ourt was going to take that into consideration in whether or not you were to vacate his commitment order or send him back to [JDOC].

* * *

MR. SANBORN [(Assistant State's Attorney)]: *** [I]t's the State's recommendation that [Justin] stay in [JDOC]. If we can't trust him not to misbehave when it counts, then society is not protected if [the court] would allow him to go home today."

The trial court expressed its dissatisfaction with respondent's performance in JDOC and indicated that it would not be vacating the October sentencing order:

"THE COURT: All right. Based upon the reports from the Illinois [JDOC], taking into consideration the nature of the original offenses, and coupled with the fact, Justin, that you've not been able to maintain positive conduct even for a short period of time, I don't think it would be appropriate

- 7 -

to vacate the order today.

I don't understand what you were thinking. I don't understand what you were thinking with this. It's almost like you were asking me not to vacate the order. That's just completely unacceptable conduct to accuse somebody of something like that. ***

So I don't think I'm going to vacate that order today. ***

* * *

THE COURT: My question, Mr. Mason, is do I set this for another status? My understanding is that if I commit him to [JDOC] they then release him when they think he is ready to be released.

MR. MASON: That is correct.

THE COURT: And I do nothing further at this point or I set it for a status?

MR. MASON: No. You don't need to do anything. If your decision is to commit him back to [JDOC], that's it. You don't need to have any further court reviews.

THE COURT: That is my decision."

The docket entry following the December hearing indicates that the trial court "decline[d] to vacate" the October 25, 2005, sentencing order, and respondent was returned to JDOC custody.

On January 19, 2006, respondent filed a motion to reconsider sentence, alleging (1) the sentence was against the manifest weight of the evidence, (2) the sentence was not in respondent's best interest, and (3) the social-investigation report indicated that respondent would benefit from intensive outpatient substance-abuse treatment. On March 14, 2006, the trial court denied respondent's motion, indicating, "I have listened carefully to Mr. Mason. I have reviewed his motion, and I have reviewed the case file. I have not heard anything today that would suggest that the [c]ourt's sentence on December 20[ ] was the wrong sentence." This appeal followed.

## II. ANALYSIS

On appeal, respondent claims the trial court was not authorized under the Juvenile Act to impose a sentence of 60 days in JDOC for "evaluation." He further claims the indeterminate term in JDOC imposed following the initial 60 days violated double jeopardy. In addition, respondent argues that the case must be remanded because respondent's trial counsel failed to

file a certificate as required by Supreme Court Rule 604(d) (210 Ill. 2d R. 604(d)) and that respondent is entitled to credit for time served. We dismiss in part for lack of jurisdiction and affirm in part.

### A. This Court Has Jurisdiction Over Respondent's Appeal From the December 20, 2005, Order

Initially, the State claims respondent's appeal should be dismissed for lack of appellate jurisdiction because the October 25, 2005, order committing respondent to JDOC was the only final order for purposes of appeal in this case. We disagree.

### 1. <u>Respondent's</u> <u>Appeal</u> <u>Arises</u> <u>From</u> <u>His</u> <u>December</u> <u>20,</u> <u>2005,</u> <u>Hearing</u>

Except where an Illinois Supreme Court rule provides for an interlocutory appeal, this court has jurisdiction to review only final judgments. <u>In re Sean A.</u>, 349 Ill. App. 3d 964, 968, 812 N.E.2d 669, 672 (2004). Supreme Court Rule 660(a) provides that "[a]ppeals from final judgments in delinquent minor proceedings, except as otherwise specifically provided, shall be governed by the rules applicable to criminal cases." 210 Ill. 2d, R. 660(a). Generally, the dispositional order in a juvenile delinquency proceeding will be considered a final order. <u>In re J.N.</u>, 91 Ill. 2d 122, 127, 435 N.E.2d 473, 475 (1982). We do agree with the State that the October 25, 2005, dispositional

- 10 -

order was a final order for purposes of appeal.  We also agree that respondent failed to timely appeal that order.

The State cites In re J.T., 221 Ill. 2d 338, 345-46, 851 N.E.2d 1, 5-6 (2006), for the proposition that failure to file timely notice of appeal from a sentencing order in a juvenile delinquency proceeding divests the appellate court of jurisdiction to consider any issue arising from that order.  In that case, the respondent pleaded guilty to criminal damage to property and was sentenced to probation.  He filed no appeal from that sentence.  After the respondent was found to have violated his probation, the trial court ordered the respondent committed to JDOC.  The respondent appealed that decision, but included in his appeal, inter alia, an argument that his case be remanded because the trial court failed to properly advise the respondent of his appeal rights when the respondent originally pleaded guilty.  The supreme court held that the appellate court lacked jurisdiction to consider that claim, because the respondent failed to appeal the improper admonishment within the specified period for appeal.  However, in J.T., the respondent was attempting to circumvent his earlier inaction by appealing the original sentencing order at a later date.  In this case, unlike J.T., respondent's appeal arises not from his sentencing order, entered October 25, 2005, but from the trial court's December 20,

2005, order, and his appeal of that order is timely. The jurisdiction of this court, therefore, is not precluded by J.T., because this appeal is based on the December order.

### 2. Respondent's Counsel Made a Proper Oral Motion To Vacate JDOC's Guardianship of Respondent at the December 2005 Hearing

Section 5-750(3) of the Juvenile Act allows a court to commit a minor to JDOC for "an indeterminate term." 705 ILCS 405/5-750(3) (West 2004). When doing so, the court "shall appoint the Assistant Director of Corrections, Juvenile Division, legal custodian of the minor." 705 ILCS 405/5-750(4) (West 2004). The Juvenile Act also provides for court review of a delinquent minor in several ways:

"(1) The court may require any legal custodian or guardian of the person appointed under this Act to report periodically to the court or may cite him or her into court and require him or her, or his or her agency, to make a full and accurate report of his or her or its doings in behalf of the minor. The legal custodian or guardian, within 10 days after the citation, shall make the report, either in writing verified by affidavit or orally under oath in open court, or otherwise

- 12 -

as the court directs. Upon the hearing of the report the court may remove the legal custodian or guardian and appoint another in his or her stead or restore the minor to the custody of his or her parents or former guardian or legal custodian.

(2) A guardian or legal custodian appointed by the court under this Act shall file updated case plans with the court every 6 months. Every agency which has guardianship of a child shall file a supplemental petition for court review, or review by an administrative body appointed or approved by the court and further order within 18 months of the sentencing order and each 18 months thereafter. The petition shall state facts relative to the child's present condition of physical, mental[,] and emotional health as well as facts relative to his or her present custodial or foster care. The petition shall be set for hearing and the clerk shall mail 10 days notice of the hearing by certified mail, return receipt requested, to the person

or agency having the physical custody of the child, the minor and other interested parties unless a written waiver of notice is filed with the petition.

Rights of wards of the court under this Act are enforceable against any public agency by complaints for relief by mandamus filed in any proceedings brought under this Act.

(3) The minor or any person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for the restoration of the minor to the custody of his or her parents or former guardian or custodian. In the event that the minor has attained 18 years of age and the guardian or custodian petitions the court for an order terminating his or her guardianship or custody, guardianship or legal custody shall terminate automatically 30 days after the receipt of the petition unless the court orders otherwise. No legal custodian or guardian of the person may be

removed without his or her consent until given notice and an opportunity to be heard by the court."  705 ILCS 405/5-745 (West 2004).

Section 5-745 appears in part seven of the Juvenile Act, entitled, "Proceedings After Trial, Sentencing," just before the above-referenced section 5-750, which defines commitment of a juvenile to JDOC.  Section 5-745's provisions permitting periodic court reviews, updated case plans, and custodial changes were clearly intended to apply to cases, such as the case at bar, in which the minor has been adjudicated delinquent and committed to JDOC.

In the case sub judice, respondent's counsel did not file a written motion to vacate JDOC's guardianship of Justin. Instead, the trial court, sua sponte, conducted a review hearing as permitted by section 5-745(1) of the Juvenile Act to evaluate respondent's progress in JDOC.  At that hearing, respondent's counsel addressed the court, stating, "[W]e would request that the [c]ourt vacate the commitment to [JDOC] and release him to his parents on a term of probation with a term of home confinement if the [c]ourt believes that would be reasonable to start things off with."

Respondent's counsel's request must be construed as a

motion to vacate the guardianship of JDOC.  Despite the fact that counsel failed to use the word "motion," he clearly requested that the trial court vacate respondent's commitment and wardship. Further, the State not only failed to object to the form of that request, but the State presented arguments on the merits of these issues as well, emphasizing reports from Justin's counselors in JDOC and arguing that respondent should "stay in JDOC."

Notably, section 5-745(3) contains no requirement as to the form or substance of the application for a change in custody, nor does the section indicate what standard the trial court should apply in deciding whether to grant such an application. When a court appoints JDOC the guardian of the minor following delinquency proceedings, as the trial court did here, section 5-745(3), therefore, contemplates that the minor or any interested person may move the court to return guardianship to his parents and, necessarily, vacate JDOC's guardianship of the minor.

Moreover, a motion need not always be made in writing to be effective.  See, e.g., People v. Davis, 356 Ill. App. 3d 725, 731, 826 N.E.2d 994 (2005) (considering merits of appeal from the defendant's oral motion to reconsider sentence after determination that State had waived objection to motion not being in writing); People v. Enoch, 122 Ill. 2d 176, 188, 522 N.E.2d 1124, 1130-31 (1988) (finding that a motion for a new trial need

not be in writing where the State does not object to the oral motion); People v. Thomas, 34 Ill. App. 3d 1002, 1006-07, 341 N.E.2d 178, 182 (1976) (finding that juvenile's motion to transfer trial to adult criminal court may be made orally). Further, the court need not adhere to strict rules of procedure in determining whether a motion has been made. See Thomas, 34 Ill. App. 3d at 1007, 341 N.E.2d at 182 (the defendant's conviction would not be reversed on the "purely formal basis" that he failed to use the word "motion" in his application for transfer to adult criminal court); Vogelsang v. Credit Life Insurance Co., 119 Ill. App. 2d 67, 72-73, 255 N.E.2d 479, 482 (1970) (formal procedures for filing a written motion will be waived where there is no objection and the court appears to have considered the merits of the motion). Therefore, in People v. Todd, 249 Ill. App. 3d 835, 840, 619 N.E.2d 1353, 1357 (1993), the court held that where a defendant made any statement that could be construed as a motion for a new trial, and the State failed to object to the statement's not being in writing, the reviewing court should consider the issue preserved for appeal. Similarly, in People v. Sanchez, 329 Ill. App. 3d 59, 66, 768 N.E.2d 99, 105 (2002), the court held that the defendant's statements at sentencing that his attorney had failed to investigate his case should have been construed by the trial

- 17 -

court as a motion for new counsel.

At the December 20, 2005, hearing, the State failed to object to the form of respondent's motion, and therefore, the State has forfeited any such objection. Additionally, in his motion to reconsider sentence and vacate commitment to JDOC, filed January 19, 2006, respondent indicated that, "[o]n December 20, 2005, the minor moved the [c]ourt to vacate the commitment to [JDOC]. The [c]ourt denied said motion and continued the commitment to [JDOC]." The State similarly voiced no objection to respondent's characterization of the December 20, 2005, proceedings. Finally, the trial court clearly considered the issue on its merits. At the December hearing, the court concluded, "I don't think it would be appropriate to vacate the order today," and the record of that hearing indicates that "the court decline[d] to vacate the order."

Although we have concluded that the respondent minor did move to vacate JDOC guardianship, we encourage counsel for respondent minors in situations such as this to avoid any doubt as to the procedural adequacy of their request for a change of custody. They should file a written motion expressly invoking section 5-745(3), when the change of custody is sought, either at the time of sentencing or after the sentencing to JDOC.

3. The Court's Denial of the Motion To Vacate Guardianship

- 18 -

<u>Is a Final Order For Purposes of Appeal</u>

The State also argues that the denial of the motion to vacate JDOC's guardianship of respondent is not a final order for purposes of appeal, relying on <u>In re Brandon S.</u>, 331 Ill. App. 3d 757, 760, 771 N.E.2d 1117, 1120 (2002), a child-dependency case. We disagree, and we decline to follow <u>Brandon S.</u> here.

In <u>Brandon S.</u>, the respondents appealed the denial of their motion for return home of their minor children or, in the alternative, unsupervised visitation with the children. <u>Brandon S.</u>, 331 Ill. App. 3d at 759, 771 N.E.2d at 1119. While acknowledging that the trial court retained jurisdiction to modify its disposition vacate its previous order, the First District held that the trial court's denial of such a modification "did not change the status quo" and was therefore not appealable. <u>Brandon S.</u>, 331 Ill. App. 3d at 761, 771 N.E.2d at 1120. The court noted, however, that the respondents' motion, "in essence, [']jumped the gun['] on the next scheduled permanency hearing and the order resulting therefrom could be analogized to an order resulting from a permanency hearing," which is not appealable. <u>Brandon S.</u>, 331 Ill. App. 3d at 761, 771 N.E.2d at 1121.

Two years after <u>Brandon S.</u>, however, in <u>In re Tr. O.</u>, 362 Ill. App. 3d 860, 865, 840 N.E.2d 1263-1267 (2005), the

Second District held it had jurisdiction to review the trial court's denial of a motion to vacate private guardianship. There, after finding that Tr. O. was neglected or abused, the trial court awarded custody of the child to foster parents and entered an order closing Tr. O.'s case. Tr. O., 362 Ill. App. 3d at 862, 840 N.E.2d at 1265. Two years later, after the time for appealing the custody order had run, the child's biological mother filed a supplemental petition to reinstate wardship and a motion to vacate private guardianship. Tr. O., 362 Ill. App. 3d at 863, 840 N.E.2d at 1266. The trial court dismissed the petition for lack of subject-matter jurisdiction. Tr. O., 362 Ill. App. 3d 862, 840 N.E.2d at 1266. On appeal, the court rejected the argument that an order denying a motion to vacate private guardianship was not a final order. The court relied on In re Faith B., 216 Ill. 2d 1, 832 N.E.2d 152 (2005), in which the supreme court held that an order establishing a private guardianship was final for purposes of appeal, even though permanency orders generally are not. The Tr. O. court held that the fact that the dismissal of the petition to vacate merely maintained the status quo was "immaterial" for the purpose of the court's jurisdiction on appeal. Tr. O., 362 Ill. App. 3d at 864, 840 N.E.2d at 1266.

The Tr. O. court enumerated four factors that the

supreme court had considered relevant in <u>Faith B.</u>: (1) the trial court believed it was entering a final order; (2) the trial court declined to set any further hearings; (3) the trial court had determined that the disposition was the only acceptable arrangement; and (4) the guardianship represented the status quo at the time. <u>Tr. O.</u>, 362 Ill. App. 3d at 864-65, 840 N.E.2d at 1266.

The instant case is more analogous to <u>Tr. O.</u> and <u>Faith B.</u> than <u>Brandon S.</u> The factors relied on by the court in <u>Tr. O.</u> apply with equal force in our case. First, the trial court clearly believed it was entering a final order at the December review hearing, as evidenced by this exchange between the court and respondent's counsel:

"THE COURT: My question, Mr. Mason, is do I set this for another status? My understanding is that if I commit him to [JDOC] they then release him when they think he is ready to be released.

MR. MASON: That is correct.

THE COURT: And I do nothing further at this point or I set it for a status?

MR. MASON: No. You don't need to do anything. If your decision is to commit him

- 21 -

back to [JDOC], that's it.  You don't need to

have any further court reviews.

THE COURT: That is my decision."

Second, the trial court declined to set any further hearings for review.  Unlike the order at issue in Brandon S., the court's order here was not merely an intermediate step along a continuing path; respondent here is not "jumping the gun" on some later scheduled chance for review in the court.  Instead, as the court made clear, the December 20, 2005, order meant that respondent could be released from JDOC only at such time as JDOC determined, and the court had nothing more to say on the matter.

Third, the trial court clearly felt that declining to vacate its prior order represented the only acceptable disposition, stating:

"THE COURT: *** Based upon the reports

from the Illinois [JDOC], taking into

consideration the nature of the original

offenses, and coupled with the fact, Justin,

that you've not been able to maintain

positive conduct even for a short period of

time, I don't think it would be appropriate

to vacate the order today.

I don't understand what you were

- 22 -

thinking. I don't understand what you were thinking with this. It's almost like you were asking me not to vacate the order."

Fourth, as in Tr. O., the trial court's denial of the motion to vacate guardianship represented maintaining the status quo at the time. At his October sentencing, respondent was committed to JDOC for an indeterminate term. When his motion to vacate JDOC's guardianship was denied at the December review hearing, the court's October order was left in place, and respondent returned to JDOC.

A trial court's ruling upon a request for a change of custody may clarify the situation by expressly stating, on the record, the court's intent that its order is final and by immediately advising the respondent minor of the minor's right to appeal the ruling. Therefore, the court's December 2005 order denying the motion to vacate the commitment to JDOC was a final order, and this court has jurisdiction to consider the appeal. However, because respondent did not timely appeal the October 25, 2005, sentencing order, this court lacks jurisdiction to consider "any issues arising from either his guilty plea or his sentence." J.T., 221 Ill. 2d at 346-47, 851 N.E.2d at 6. We therefore confine our review to those issues properly arising from the December 20, 2005, order denying respondent's motion to vacate

- 23 -

JDOC's guardianship of respondent.

### B. Respondent's Sentence is Authorized by the Juvenile Courts Act

Respondent claims that the trial court's December 20, 2005, order violated the prohibition against double jeopardy by resentencing respondent for the same acts for which respondent was sentenced in October. As noted above, this court lacks jurisdiction to consider issues arising from the October order. However, to fully address respondent's double-jeopardy claim, we must briefly address respondent's additional claim that the trial court's October sentencing order was not authorized by the Juvenile Act. We disagree with both of respondent's contentions.

Respondent argues that the trial court's October 25, 2005, order sentenced respondent to a 60-day period of "evaluation," a sentence not authorized by the Juvenile Act. Respondent points out that the Juvenile Act strictly limits the options available to the court in sentencing a minor who is over the age of 13 and adjudged delinquent. Section 5-710 of the Juvenile Act enumerates these options, which include probation, conditional discharge, substance-abuse assessment and treatment, detention for a period not to exceed 30 days, and commitment to JDOC. 705 ILCS 405/5-710(1) (West 2004). Section 5-750, however, provides that "the commitment of a delinquent to the [JDOC] shall

- 24 -

be for an indeterminate term," except where the minor is adjudged delinquent for the offense of first degree murder.  705 ILCS 405/5-750(3) (West 2004).

Respondent relies on the trial court's statements, made at the October hearing, that it was "sentencing [respondent] to 60 days," to argue that the sentence imposed by the court did not comply with section 5-750's condition that any commitment to JDOC be for an indeterminate term.  However, in the remainder of that hearing, respondent's counsel informed the court that the court could sentence respondent only for an indeterminate term.  As previously discussed, the court then corrected its previous statements and indicated that it was sentencing respondent for an indeterminate term, to be returned to court on December 20, 2005.  This intent is reflected in the written orders following the hearing.  Neither the written entry following the October hearing nor the court's written order of commitment mentions a 60-day "sentence."  Where the court's oral and written orders are arguably inconsistent, and the written order is consistent with the court's intent, the written order will be enforced.  People v. Smith, 242 Ill. App. 3d 399, 402, 609 N.E.2d 1004, 1006 (1993).  Therefore, the court clearly sentenced respondent for an indeterminate term in compliance with the Juvenile Act, not for a 60-day "evaluation" as respondent claims.

Clearly, then, respondent's return to court in December was not, as respondent contends, the end of his sentence, but instead respondent was returned to court pursuant to the court's reviewing authority under the Juvenile Act. When a trial court commits a minor to JDOC, the sentencing provisions of the Juvenile Act state that the court "shall appoint the Assistant Director of Corrections, Juvenile Division, legal custodian of the minor." 705 ILCS 405/5-750(4) (West 2004). The preceding section of the Juvenile Act, section 5-745, entitled "Court Review," which also appears in the sentencing provisions, allows the trial court to require "any legal custodian or guardian of the [minor] appointed under this Act," or the custodian's agency, to appear before the court and report, "as the court directs." 705 ILCS 405/5-745(1) (West 2004). The provision also indicates that, at such a hearing, "the court may remove the legal custodian or guardian and appoint another in his or her stead or restore the minor to the custody of his or her parents or former guardian or legal custodian." 705 ILCS 405/5-745(1) (West 2004). This section, along with section 5-745's additional provisions for court review, updated case plans, and changes in custody, establish a wide variety of mechanisms by which the trial court may continue to exercise authority over a delinquent minor, in JDOC and otherwise. Contrary to respondent's assertion, the

- 26 -

Juvenile Act clearly authorizes the action of the trial court in this case. The court required JDOC, as respondent's legal custodian, to return Justin for the review hearing and report on respondent's progress at that review hearing, and JDOC did so.

Further, the trial court did not resentence respondent at the December hearing. As discussed above, respondent's October sentence was for an indeterminate term and therefore had not ended when respondent was returned to the court in December. At that hearing, respondent made a motion to vacate the commitment, indicating that he understood the sentence was ongoing. The court did not resentence respondent when it declined to grant that motion, nor did it subject respondent to any further prosecution or punishment. In fact, the sentence remained completely unaffected by the December hearing because the motion to vacate was denied. Therefore, respondent was not subjected to double jeopardy. See People v. Sienkiewicz, 331 Ill. App. 3d 70, 73, 771 N.E.2d 580, 583 (2002) ("The double jeopardy clause protects a defendant from (1) a second prosecution after acquittal; (2) a second prosecution after conviction; and (3) multiple punishments for the same offense").

In the future, a trial court invoking the provisions of section 5-745 when a respondent minor is sentenced to JDOC should clearly state that the minor is sentenced to an indeterminate

term in JDOC, which is not to exceed the maximum sentence possible for an adult. The court should also expressly state that maximum (such as, for instance, seven years) in its sentencing order. The court may then order that the minor be returned to court on a date certain, expressly pursuant to section 5-745(a). Last, the court should then state that a hearing will be held pursuant to section 5-745(c) with respect to a possible change of custody.

### C. Respondent's Counsel Was Not Required To File a Rule 604(d) Certificate

Respondent next contends that his case must be remanded because his trial counsel failed to file a certificate as required by Illinois Supreme Court Rule 604(d). That rule provides, in pertinent part:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence ***. *** The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to

ascertain defendant's contentions of error in the sentence or the entry of the plea of guilty, has examined the trial court file and report of proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings."  210 Ill. 2d R. 604(d).

Although these Rule 604(d) requirements apply to juvenile proceedings (In re J.E.M.Y., 289 Ill. App. 3d 389, 390, 682 N.E.2d 451, 452 (1997)), these requirements do not apply to appeals other than appeals filed "from a judgment entered upon a plea of guilty."  Therefore, in People v. Mathis, 357 Ill. App. 3d 45, 48, 827 N.E.2d 932, 934 (2005), the court held that a motion to vacate judgment filed more than 30 days after the imposition of the defendant's sentence was a collateral attack on the judgment rather than a direct appeal, and therefore the defendant was not required to file a Rule 604(d) certificate.

Respondent's appeal simply is not an appeal from the judgment entered by the trial court upon the plea of guilty. That judgment, as previously discussed, was entered on October 25, 2005, and respondent did not appeal therefrom.  Instead, like the cause in Mathis, the present appeal arises from a collateral

- 29 -

attack via the December 20, 2005, motion to vacate. Therefore, no Rule 604(d) certificate was required.

### D. This Court Lacks Jurisdiction To Consider Respondent's Claim of Credit for Time Served

Finally, respondent argues that he is entitled to credit for 21 days served while in the custody of the Livingston County jail awaiting arraignment and 41 days served while on home confinement pending sentencing. We hold that this court lacks jurisdiction to consider this claim at this time.

A claim for additional presentence credit cannot be forfeited by a defendant's failure to raise the issue in the trial court. See, e.g., People v. Dieu, 298 Ill. App. 3d 245, 249, 698 N.E.2d 663, 666 (1998) (holding that normal forfeiture rules do not apply to claims of improper sentence credit for time served).

However, while forfeiture is a limitation only on the parties, and therefore may be dispensed with by the court, lack of jurisdiction in this court cannot be overlooked. Compare People v. Normand, 215 Ill. 2d 539, 544, 831 N.E.2d 587, 590 (2005) (noting that the rule of forfeiture is an admonition to the parties and not a limitation on the court), and People v. Schutz, 344 Ill. App. 3d 87, 90, 799 N.E.2d 930, 932 (2003) (electing to consider defendant's claims despite forfeiture),

with <u>People v. Collins</u>, 202 Ill. 2d 59, 65, 782 N.E.2d 195, 198 (2002) (holding that appellate court decision rendered without jurisdiction is void).  Therefore, in <u>People v. Flowers</u>, the supreme court reversed as without jurisdiction an appellate court decision to vacate a cost-withholding provision in a trial court order, despite the appellate court's finding that the trial court's order was void:

> "A well-established principle of law holds that a void order may be attacked at any time or in any court, either directly or collaterally.  [Citation.]  The appellate court relied on this principle to vacate the cost-withholding provision of the trial court's judgment.  We note, however, that there is a flaw in the appellate court's reasoning.  Although a void order may be attacked at any time, the issue of voidness must be raised in the context of a proceeding that is properly pending in the courts.  If a court lacks jurisdiction, it cannot confer any relief, even from prior judgments that are void.  The reason is obvious.  Absent jurisdiction, an order directed at the void

judgment would itself be void and of no effect." People v. Flowers, 208 Ill. 2d 291, 308, 802 N.E.2d 1174, 1184 (2003).

As noted above, this court's jurisdiction in this case is limited by the supreme court's decision in J.T., holding that a respondent's failure to timely appeal from sentencing deprives a reviewing court of jurisdiction over "any issues arising from either his guilty plea or his sentence." (Emphasis added.) J.T., 221 Ill. 2d at 346-47, 851 N.E.2d at 6. Respondent's contention that he is entitled to presentence credit is, ultimately, a claim that the order committing him to JDOC should be amended to reflect that credit. In this case, the only order committing respondent to JDOC was issued at respondent's October 2005 sentencing hearing. Under the supreme court's analysis in J.T., this court does not have jurisdiction to consider issues arising from that October sentencing. As previously discussed, respondent was not sentenced in December 2005 and therefore no sentencing judgment was issued. The record contains no other sentencing judgment we could order amended to satisfy respondent's claim. Respondent's request for additional presentence credit is an issue directly "arising from either his guilty plea or his sentence" and does not arise in any manner that would confer jurisdiction upon this court.

- 32 -

We also note that our holding is not affected by the fact that respondent is properly before the court at this time on issues arising from the December 2005 order denying the motion to vacate JDOC's guardianship. Our courts have repeatedly found jurisdiction over issues raised by criminal defendants on appeal while dismissing other issues raised in the same appeal for lack of jurisdiction. See, e.g., People v. O'Connor, 313 Ill. App. 3d 134, 136-37, 728 N.E.2d 1175, 1177 (2000); People v. Lee, 318 Ill. App. 3d 417, 419, 743 N.E.2d 1019, 1021 (2000) (dismissing the defendant's claims regarding nonfinal denial of motion to dismiss for lack of jurisdiction despite finding of jurisdiction on remaining issues on appeal); see also Faith B., 349 Ill. App. 3d 930, 936, 812 N.E.2d 640, 645 (2004) (holding that the appellate court lacked jurisdiction over permanency issues on appeal while retaining jurisdiction over motion to vacate).

Therefore, we hold that this court lacks jurisdiction to consider respondent's claim to presentence credit at this time. We note, however, that the trial court retains jurisdiction over "nonsubstantial matters" such as the amendment of the sentencing judgment, despite the filing of an appeal. Baker v. Department of Corrections, 106 Ill. 2d 100, 106, 477 N.E.2d 686, 689 (1985). Thus, nothing in this ruling precludes respondent from challenging the sentencing judgment in the trial

court.  See People v. Green, 188 Ill. App. 3d 1027, 1030, 544 N.E.2d 1307, 1309-10 (1989) (holding that the court lacked jurisdiction to consider the defendant's claim of presentence credit because the defendant had failed to timely appeal the judgment and sentence, but noting that the defendant could challenge validity of the sentencing judgment in the trial court).

### III. CONCLUSION

For the foregoing reasons, we dismiss respondent's claims that his sentence was unauthorized and that he is entitled to credit for time served for lack of appellate jurisdiction. The trial court's order is affirmed in all other respects.

Dismissed in part and affirmed in part.

STEIGMANN, J., concurs.

APPLETON, P.J., dissents.

PRESIDING JUSTICE APPLETON, dissenting:

I respectfully dissent from the decision of the majority and would dismiss this appeal for want of appellate jurisdiction.

Despite the recognition of what the trial court attempted to do, sentences imposed on juveniles for criminal offenses are to be of an indeterminate term. 705 ILCS 405/5-750(3) (West 2004). That term cannot exceed the maximum adult sentence for the offense charged. 705 ILCS 405/5-710(7) (West 2004). The imposition of the sentence to the JDOC is a final order. In re J.N., 91 Ill. 2d 122, 127, 435 N.E.2d 473, 475 (1982).

Here, the trial court brought the juvenile defendant back to court after 60 days for a review hearing. This is pursuant to the trial court's inherent ability to modify, by reduction, any sentence imposed in juvenile cases. See also 705 ILCS 405/5-745(1) (West 2004). The assertion of the majority that defense counsel made an oral motion for discharge is not correct. Defense counsel only mirrored the language and original intention of the trial court to review respondent's status and progress.

Absent the filing of a motion for discharge or a change of custody, the trial court was not revested with original

jurisdiction. Had such a motion been filed and denied, an appealable order would exist. Here, however, the trial court held a review of the juvenile's progress, found it wanting, and made no change to the original order. This "review" was pursuant to the continuing jurisdiction of the trial court created by the original petition for adjudication, which resulted in a finding of guilt and imposition of sentence. The opportunity to appeal that sentence ended on the 30th day following its imposition. See 188 Ill. 2d R. 606(a).

No new sentence was imposed following review and nothing was done by the trial court to create a reviewable order. I would therefore dismiss the appeal.